## ALLENDER v. C. R. I. & P. R. R. Co.

1. **Negligence:** IS A QUESTION OF FACT. In an action for personal injuries the question as to whether the facts proved amount to negligence on the part of defendant is generally one of fact for the jury.

2. —— The question of contributory negligence on the part of plaintiff is also one of fact for the determination of the jury.

3. **Damages:** FOR PERSONAL INJURIES. In an action against a railroad company for personal injuries received, the plaintiff cannot recover for damages which might have been avoided by the use of reasonable and ordinary diligence in effecting a cure. The use of slight care and diligence would not be sufficient.

4. **Railroad:** WHEN RELATION OF PASSENGER EXISTS. The actual purchase of a ticket or the entering of a car is not always necessary to constitute the relation of passenger, and place upon the railroad company that degree of care which a common carrier owes a passenger.

5. —— RULE APPLIED. That the plaintiff entered the office or waiting-room provided by the company for passengers, and informed the depot or ticket agent of her desire to become a passenger; that she, in good faith, placed herself under his direction, and that he directed her as to the manner in which she was to get on a caboose car, on which she was to take passage, would, in itself, be sufficient to justify the jury in finding that the relation of passenger existed.

6. **Pleading:** NEGLIGENCE. Where, in an action against a railroad company for injuries received by the plaintiff, the charge of negligence is a general one, the particular act of negligence leading to the injury is a matter of proof.

7. **Instructions:** NOT PERTINENT. It is error to give instructions respecting matters of which there is no evidence.

*Appeal from Jefferson Circuit Court.*

TUESDAY, OCTOBER 21.

ACTION to recover damages for injuries received by cars on defendant's road.

On the 5th day of November, 1870, the defendant operated a railroad in Jefferson county, and had a depot at Fairfield, which was then the terminal station of the road. About half-past four o'clock in the afternoon of that day plaintiff, a resi-

Allender v. C. R. I. & P. R. R. Co.

dent of Jefferson county, eighteen years of age, and who had never ridden on the cars, applied at the depot of defendant, in Fairfield, for passage to Acheson, the next station on the road.

She was informed by the ticket agent that the regular train had gone, but that a freight train would leave about 5 o'clock, which would have a car on which she could ride. She informed the agent that she would rather go on that than wait for the passenger train, and then went to the house of an acquaintance near the depot.

In a short time she returned, went to the door of the ticket office, asked for a ticket, and inquired how long it would be before she could go. The agent informed her that the train would start in about twenty minutes; told her that she could pay her fare to the conductor, and that she had better go and get on the car and be ready. She told the agent that she had never ridden on the cars before, and asked him if they would not back up to the station. He said the regular passenger train did.

The caboose attached to this freight train had seats like a passenger car in one end, the other part being for the conductor and train men. There were steps, a door and a platform at each end, and doors in the side in the part used by the trainmen.

At the place in question the defendant's road had three tracks. The caboose stood on the track farthest from the depot, and about two hundred and fifty feet north of it. The engine stood up the track still further north. To the rear or south end of the caboose was attached a flat car. The bunter of the flat car was out. About five feet south of the flat car stood a box-car.

The ticket agent went with the plaintiff out on the platform over the first track to the middle track, in view of the caboose car, pointed it out with his finger, and directed her to go to it and get on.

The plaintiff passed north up the track until she came to the south end of the flat car, and then, seeing no means of

entering the caboose car, as she supposed, she undertook to pass between the flat car and the box car, a few feet south of it, hoping to find an opening by which she might enter the car on the other side, first looking up and down the track, and discovering nothing in motion. At this time the brakeman and conductor were engaged in making up the train. Four freight cars detached from the locomotive, the conductor upon them, were very slowly coming down from the north to be attached to the caboose. When they came near the caboose the conductor got off and walked alongside to make the coupling. The concussion was slight, but was sufficient to carry the caboose and flat car far enough back to almost close the space through which the plaintiff was at that moment passing. She was caught between the flat car and the box car about the hips, and received the injuries for which she sues.

Jury trial. Verdict for plaintiff for $5,000. Motion for new trial overruled. Judgment upon the verdict. Defendant appeals.

The further material facts appear in the opinion.

*Cook, Richman & Bruning* for the appellant.

*McCoid & Heron* for the appellee.

DAY, J. — I. The first point urged by appellant is that there is no evidence of negligence on the part of defendant.

1. NEGLIGENCE.

This branch of the case is discussed as though the only acts upon which plaintiff can ground her right of recovery are those connected with the backing and coupling of the four freight cars, or the positive direction of the agent to plaintiff to go through the opening in the cars; and it is urged that the backing and coupling were conducted with skill and care, and that the agent did not direct plaintiff to go through the opening between the cars, as the evidence shows he did not see it.

Appellant, we think, places too narrow a construction upon the issue. The first count of the petition alleges that at the

date of the injury plaintiff applied at the ticket-office in Fairfield for passage to Acheson, and placed herself in defendant's care as a passenger; that the agent received her as a passenger, directed her to go to the car, pointed out the way, and that she, in obeying such direction, passed across the track of said road, and, without her fault, and by negligence of defendant, was crushed between two cars and seriously injured. The immediate cause of her injury was the closing of the space between the box and flat cars when she was between them. If the space had not closed, or if plaintiff had not been in it, she would not have been injured in the manner she was.

Whether the injury is ultimately to be traced to the manner in which the four moving box-cars came in contact with the caboose, or to the neglect to bring the train to the platform, or to the act of the agent in directing her to get on the car before the train was made up, or to the failure to have some one present to show her the way into the car, or to some other neglect or omission, the petition does not state. It alleges only that in obeying the agent's directions, she was, by the negligence of defendant, crushed between two cars and injured. The averment is broad enough to cover any act of negligence contributing to the injury. With this understanding of the issue, we are unable to say that the general verdict of the jury, attributing negligence to the defendant, is not supported by the evidence.

The plaintiff, a young woman, inexperienced in railway travel and unattended, applied for passage on defendant's cars. She was told she could go on a freight train, to which was attached a car on which she could ride. When she asked if the cars would not back up to the station, she was told the regular passenger train did, and was directed to go and get in and be ready, twenty minutes before the train started, and whilst cars were switching on the tracks making up the train. She was thus sent across two tracks, two hundred and fifty feet north of the depot, to make her way into the caboose. The evidence shows that when this train was made up it was usual for the conductor to give the ticket agent a signal, so

that passengers might then get on; and that about half the time the train backed down to the platform. If the agent had not directed plaintiff to get on the car until he received this signal, or if he had caused the train to come to the platform, or had accompanied plaintiff to the car, or had stationed some one there to show her the way to enter, it is not probable that the accident would have happened. Whether certain facts proved amount in a given case to negligence is usually a question of fact for the jury.

The defendant, through its agents, having omitted all of the precautions above named, we cannot say, as mere matter of law, that it was not guilty of negligence.

II. It is further urged that the plaintiff, by her own negligence, contributed to the injury. We do not, upon this branch of the case, feel justified in interfering with the verdict. If plaintiff, seeing the cars approach, or without looking for them, had undertaken to cross the track, and been injured, she would have been guilty of contributory negligence. *Dodge* v. *The Burlington, C. R. & M. R'y Co.*, 34 Iowa, 276.

The evidence, however, is positive that when plaintiff came within about two feet of the opening she looked both up and down the track, and saw nothing moving. It is clear that at that time the four freight cars were in fact moving; but they were moving very slowly, and were coming almost directly toward her. It is an optical fact, to which the experience of all bears witness, that motion under such circumstances is not readily detected. A distant object may even rapidly approach a beholder, and yet appear to be standing still. And whilst the rapid motion of a near object would likely be detected, yet its motion, if very slow, might escape observation.

If to this be superadded the fact that the locomotive — the only thing which it would naturally be supposed would produce motion of railroad cars — was seen standing far up the track, it is not at all improbable that plaintiff looked, as she testifies she did, and yet failed to discover any moving cars.

Seeing the locomotive standing far away, looking up and down the track and discovering no car in motion, we cannot

say that she was, nevertheless, as matter of law, guilty of negligence in attempting, under such circumstances, to cross the track.

III. The court gave to the jury sixteen instructions, which, in the main, quite fairly present the case. To six of them the defendant makes objection. Some of them are exceptionable because they suggest to the jury matters outside of the evidence produced. The sixteenth instruction given is as follows:

3. DAMAGES.

"And she may recover, not only the amount of damages which she suffered prior to the commencement of this suit, but also all the damages proceeding continuously from the injury complained of which she has suffered up to the present time, and which it is reasonably certain she will suffer in the future. There must, however, be a reasonable certainty as to such future damages. Yet she cannot recover for the damage which she might have avoided by the exercise of slight care and diligence after she became aware of the injury of which she complains."

This instruction is erroneous. It is the duty of a person placed in the condition of plaintiff to exercise not slight, but reasonable care and diligence to effect a speedy and complete cure. And for injuries or suffering caused or enhanced by the neglect to use such care she cannot recover. *Collins* v. *City of Council Bluffs*, 32 Iowa, 324.

Evidence was introduced which, appellant claims, shows a failure to exercise such care, as her failure to consult a physician or take medicine after the lapse of about one week from the injury, and her going to work soon after the injury was received.

It was the right of the defendant to have the verdict of the jury as to whether plaintiff exercised ordinary care in the means employed to effect a cure. And we cannot say that it has not been prejudiced by the failure to submit this question under the proper instruction.

For the error in this instruction the cause must be reversed, but as the questions raised in the other instructions complained

of, may arise upon the new trial, it is necessary that we should consider and determine them.

Whilst in the main, the instructions given very fairly present the case, yet some of them have objection- *4. RAILROAD.* able features which should be avoided on the new trial.

The seventh instruction is as follows:

"If you believe that the plaintiff entered into an office or waiting room provided by defendant for passengers, and informed the depot or ticket agent of her intention and desire to become a passenger; that she placed herself, in good faith, under his direction as such; that such agent directed her in getting on (attempting to get on) the car; these facts, if established to your satisfaction by the evidence, would be sufficient to justify you in finding that the relation of passenger existed, although she had not purchased a ticket, and had not entered a car." This instruction is not only right in principle, but it is supported by authority.

If the actual purchase of a ticket, or the entering of a car, is necessary in order to constitute the relation of a passenger, then no one taking passage on a railway at a way station where no tickets are sold, can demand of the company the exercise of that high degree of care which a common carrier owes a passenger, until he had actually obtained admission to the car. If the doctrine of the instruction be not right, then a person taking passage at a way station, without the means of procuring a ticket, might be precipitated under the wheels and injured, from a defect in the steps, and yet could demand of the company the exercise of only ordinary care.

The rule given by the court is distinctly recognized in Shearman & Redfield on Negligence, section 262, and cases cited, and we have no doubt of its correctness.

The eighth instruction is as follows: "The plaintiff's right to recover is not affected by her having contributed to her injury, unless she was in fault in so doing; if her share in the transaction was innocent and not incautious, and she was without fault on her part, it furnishes no excuse for the defendant.

And if you find, from the evidence, that the defendant's agent, by his own act, threw the plaintiff off her guard, and gave her good reason to believe that vigilance was not needed, the lack of such vigilance on her part is no bar to her right to recover." Complaint is made of the last sentence of this instruction. Whilst this clause is, undoubtedly, the law in a proper case (Shearman & Redfield on Negligence, § 28, and cases cited), yet it should not have been given here, because not applicable to the evidence produced. It was doubtless given because of the testimony of plaintiff that the agent told her to go down and she would see a way to get in, and there would be no trouble nor danger. If the plaintiff was guilty of any negligence, it was in the manner of entering the space between the box and flat cars. The evidence is undisputed that neither she nor the agent saw this space at the time he directed her to go and get on the caboose.

If she had been injured in going to the caboose, because of obstruction in, or the imperfection of the way, it might fairly have been said that if she was rendered incautious because of the statement of the agent that there would be no danger, she could recover notwithstanding the lack of her vigilánce. But it cannot with any fairness, be claimed that the general statement of the agent that there would be no trouble nor danger, could have been understood by her to mean that there would be no trouble nor danger in going through an opening five feet wide between two cars, and thus passing beyond the caboose and across the track on which it stood, and that she might do this act, without the exercise of care and vigilance. We have already seen, that the mere crossing of this track, between this space, exercising proper vigilance and care to discover the approach of moving cars, was not negligence as a matter of law.

But, in doing this act, she cannot be exonerated from the necessity of exercising due care, because of the general statement of the agent that there would be no danger or trouble in getting to or on the car.

The ninth instruction is as follows:

"It is the duty of a railroad company to use due care, not only in conveying its passengers upon the journey, but also in all preliminary matters, such as their reception into the car and their accommodation while waiting for it; and whether bound to render assistance in taking passengers aboard its cars or not, it is liable for the consequences of negligence in giving directions to passengers as to the mode of entering."

6. PLEADING.

This instruction is almost in the exact language of passages contained in section 275 of Shearman & Redfield on Negligence. It is not urged that this instruction is inherently wrong, but that it is inapplicable to the issues. It is urged that the petition nowhere charges that there was negligence in giving directions as to the mode of entering the car.

We have before seen that this view of the issue is too narrow a one, that the charge is a general one, that plaintiff was injured by the negligence of defendant. The particular act of negligence is a matter of proof.

The tenth instruction is as follows:

"Whether or not it was the duty of defendants' agents to have assisted plaintiff in getting on the car is a question for you to determine (under the instructions here given) from the evidence in the case, and to this end it is proper for you to consider the train and the car, their distance from the platform and depot, the facility with which access could be had, the sex, age and inexperience of the plaintiff, if these were known to defendants' agents, and all the facts and circumstances surrounding the case." It is claimed that the fair meaning of this instruction is, that if the jury believe that the defendants' agents knew plaintiff was an inexperienced girl, and the car was some distance from the depot, then it was the duty of the agent to have escorted plaintiff to the car, and assisted her in getting on it.

The instruction does not, as we understand it, mean this. The jury are told that they are to determine from the evidence whether or not it was the duty of defendant to have assisted plaintiff in getting on the car. In Shearman & Redfield on

Negligence, section 278, it is said: " The obligation of a carrier to assist passengers in getting on and off depends largely upon the nature of his vehicle, the facility with which access may be had without assistance, and similar circumstances." The circumstances of this case were the following: Plaintiff had never ridden on the cars, and she so informed the defendants' agent. She was about to take passage on a freight train, to which was attached a car for the accommodation of passengers; it stood two hundred and fifty feet north of the depot, and on the third track therefrom; the train was being made up; plaintiff asked if it would not come to the platform; she was told to go and get on and be ready. Under these circumstances the jury are told, not that the inexperience of plaintiff and the distance of the train from the platform made it the duty, as a question of law, for defendant to assist her on the train, but that these facts were proper to be considered by them, in determining the duty of defendant. In this sense the instruction seems to us unobjectionable.

"The thirteenth instruction, and the only remaining one of which defendant complains, is as follows:

"When the carrier of passengers by railway does not receive passengers into the car at the platform erected for that purpose, and suffers or directs passengers to enter at out-of-the-way places, it is its duty to use its utmost care in preventing accidents to passengers while so entering, *and to provide for them a safe and convenient way and manner of access to the train, and in preventing the interposition of any obstacles which would unnecessarily impede or expose them to harm while proceeding to take seats in the cars,* and if you find in this case that the defendants' agents were negligent within the meaning of this instruction, and that plaintiff was injured thereby, still the question remains whether or not the plaintiff on her part contributed by her own negligence to the injury; and if you find she did so contribute, she cannot recover. If she did not contribute, she can recover."

7. INSTRUCTIONS.

The italics are ours. The objectionable feature of this in-

struction is, that there is no evidence whatever of any failure on the part of the defendant, in respect to any of the matters indicated in italics.

In determining the correctness of the instructions given, we have incidentally passed upon the refusal to give those asked by defendant, and need give them no further notice. As the cause must be reversed, we need not consider the question as to the excessiveness of the damages.

Reversed.