## SCHEPERS v. UNION DEPOT RAILROAD COMPANY, *Appellant.*

### Division One, February 19, 1895.

1. **Negligence:** INSTRUCTIONS: CONTRIBUTORY NEGLIGENCE. Where, in an action for personal injuries, the evidence tends to show contributory negligence on plaintiff's part, it is error to instruct the jury that the law presumes the plaintiff was exercising due care, and that, to repel such presumption, evidence of negligence on his part is necessary.

2. **Carrier:** PASSENGER. The relation of carrier and passenger can be created only by contract, express or implied.

| | |
|---|---|
| 126 | 665 |
| 128 | 71 |
| 126 | 665 |
| 134 | 690 |
| 126 | 665 |
| 135 | 617 |
| 126 | 665 |
| 72a | 167 |
| 126 | 665 |
| 142 | 550 |
| 73a | 41 |
| 126 | 665 |
| 82a | 579 |
| 126 | 665 |
| 157 | 505 |
| 126 | 665 |
| 88a | 362 |
| 89a | 126 |
| 126 | 665 |
| 96a | ¹18 |
| 126 | 665 |
| 102a | ³208 |

3. ———: ———: STREET RAILROAD. One does not become a passenger on a street railway by a mere attempt to get on a car while it is in motion; there must, in such case, be some act on the part of the carrier indicating its acceptance of such person as a passenger to make him one.

4. ———: ———: ———: MOVING CAR. A person attempting to get on an electric street railway car while it is in motion, assumes the risks of injury only from the ordinary movements of the car.

5. ———: ———: ———: ———. The deceased, in this case, *held* not to have been guilty of contributory negligence, as a matter of law, in attempting to board a street car, though propelled by electricity, moving at a rate of speed not exceeding three or four miles an hour.

6. ———: ———. The failure of a street railway company to use a fender, designed for the protection of passengers only, is immaterial in an action for the death of a person who was not a passenger.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*O. J. Mudd* with *G. A. Finkelnburg* for appellant.

(1) Schepers was not a passenger, and the servants in charge of the car owed him no duty but that of ordinary care to avoid injury to him after they saw him in actual danger. If the deceased presented himself at the proper time and place, and the servants in charge of the car saw him and became aware of his intention to board the train, or by the exercise of proper care would have so seen and become aware—conditions wholly ignored in this instruction—then defendant owed him the highest degree of care. But even assuming these conditions the degree of care is erroneously stated in this instruction. *Dougherty v. Railroad,* 97 Mo. 647; *Furnish v. Railroad,* 102 Mo. 438; *Smith v. Railroad,* 108 Mo. 243; *Jackson v. Railroad,* 118 Mo. 199. (2) The court erred in the matter of giving instructions for plaintiff. The petition charges no neg-

ligence in failing to have a lifeguard on the car. Plaintiff can not plead one defect and recover on another. *Buffington v. Railroad*, 64 Mo. 246; *Gurley v. Railroad*, 93 Mo. 445; *Ely v. Railroad*, 77 Mo. 34; *Waldhier v. Railroad*, 71 Mo. 514. Instruction number 5, given for plaintiff, was also erroneous in telling the jury that a presumption of law existed in plaintiff's favor, so far as the defense of contributory negligence was concerned. *Rapp v. Railroad*, 106 Mo. 423; *Moberly v. Railroad*, 98 Mo. 183; *Myers v. Kansas City*, 108 Mo. 480.

*John A. Gilliam* and *John W. Drabelle* for respondent.

(1) Persons getting on and off these cars are entitled to the protection of passengers. *Weber v. Railroad*, 100 Mo. 210; *Ridenour v. Railroad*, 102 Mo. 270; *Murphy v. Railroad*, 43 Mo. App. 342; *Swigert v. Railroad*, 75 Mo. 475; *Straus v. Railroad*, 86 Mo. 421. (2) The law presumes every man to be using due care for his own safety, and that presumption is not overthrown by the mere fact of his being injured; there must be evidence of carelessness or negligence on his part. *Buesching v. Gaslight Co.*, 73 Mo. 233; Shearman and Redfield on Negligence [4 Ed.], secs. 109, 110; *Hoyt v. City*, 41 Wis. 105; *Gay v. Winter*, 34 Cal. 153; *Allen v. Willard*, 57 Pa. St. 374; *Railroad v. Rowan*, 66 Pa. St. 393. Where the evidence of negligence is irresistible it is the duty of the judge to decide, but where the facts, or the inferences to be drawn from them, are in any way doubtful, the whole matter should be submitted to the jury under proper instructions. *Barton v. Railroad*, 52 Mo. 253; *Pendrill v. Railroad*, 34 N. Y. Supr. Ct. 481; *Dickens v. Railroad*, 1 Abb. (N. Y.) App. 504; *Keller v. Railroad*, 2 Abb. (N. Y.) App. 480; *Fernandes v. Railroad*, 52 Cal. 45.

MACFARLANE, J.—This is an action, under the statute, to recover the sum of $5,000, as damages, for the death of plaintiff's husband by the alleged negligence of defendant's employees in charge of one of its trains of street cars.   A trial resulted in a verdict and judgment for plaintiff and defendant appealed.

Defendant operated by electric power a line of street cars along Russell avenue, Twelfth street, and other streets in the city of St. Louis.   Russell avenue runs east and west through the city and crosses Twelfth street at right angles.   The railway track is located along Russell from the east to Twelfth street, where it turns south by a long curve onto that street.   There is a rising grade on the avenue until Twelfth street is reached, from which there is a descending grade of about four feet in one hundred.   Two cars, known as the motor car and trailer, were run in a train on the occasion of the death of plaintiff's husband.   A curve of the railway track extends down Twelfth street about twenty-seven feet from the center of the cross walk on the south side of the avenue.   On the southwest corner of these streets is a saloon having a side door opening to Twelfth street, near the corner of the building.   Just prior to the accident, deceased was in the saloon awaiting a train going south on Twelfth street, on which he intended taking passage.   On seeing a train passing upon the curve he left the saloon hastily, ran down Twelfth street, passed the trailer, and undertook to board the motor car while in motion, and in doing so was thrown down and the trailer ran over him, causing his death.

The petition charges in substance that while the cars were going slowly round the curve at Twelfth street and Russell avenue, he hailed them, by beckoning with his hand, with the view of taking passage; that both

the conductor of the motor and the trailer car knew from his actions that he intended and desired to take passage thereon, but they negligently failed to signal the motor man thereof; that while the cars slowly rounded said curve he took hold of the motor car to get on, when the electric power was negligently, suddenly and without warning applied by the motor man with great force, by which the cars were suddenly jerked forward, and he was thereby thrown upon the track and killed.   The petition also charged negligence in failing to provide a proper lifeguard between the two cars.

The answer was a general denial, and a plea of contributory negligence.

An ordinance of the city required that "when any car shall be required to stop at the intersection of streets to receive or leave passengers, it shall be stopped so as to leave the rear platform partly over the crossing." The evidence offered by plaintiff tended to prove that when deceased came out of the saloon at the side door, the hind or trailer car had not yet passed over the crossing; that deceased held up his hand as a signal that he wished to take passage, and that the conductor on the motor saw the signal, but gave no notice to the motor man to stop; that the train was then moving at the rate of three or four miles per hour; that deceased ran in a southeasterly direction toward the motor car, caught up with it, and took hold of the hand hold on the rear dash board with his left hand, and as he reached with his right hand for the hand hold on the body of the car, the speed was suddenly increased and deceased was thrown down and the trailer ran over him.   It was shown by the evidence introduced by plaintiff that deceased was not on the street when the forward car reached the crossing, and that neither the motor man nor the conductor on the trailer saw him approaching

the cars at all.   The conductor on the motor car saw him when within five to ten feet of that car, but gave no signal to stop until he saw the danger to which deceased was exposed.

The evidence of defendant tended to prove that the hind car had passed the crossing before deceased came out of the saloon, and was running down the grade at increasing speed, and in the usual manner, when deceased undertook to board it; that there was no unusual jerk or sudden increase in speed, and that every effort was made to stop the train, as soon as the conductor saw the peril in which deceased had placed himself.

Evidence was also offered by plaintiff to the effect that, at the time of the accident, there was in approved use on some street railroads in the country an appliance beneath cars, known as the "Johnson fender," which was a protection to passengers and train employees who might fall between the cars.   This fender was not in use on these cars.   Whether this contrivance was in approved use, and whether it would afford protection was disputed.   Evidence was given supporting both theories.

Eight instructions were given the jury at request of plaintiff.   Some of these are very lengthy, and we will only undertake to consider the principles of law involved in them without setting them out in full.

I.   It may be said in the first place that reversible error was committed in an instruction given plaintiff on the question of contributory negligence.   By this instruction the jury was told "that the law presumes every man to have been using due care for his own safety, and that presumption is not overthrown by the mere fact of his being injured; that to overcome the presumption of such due care there must be evidence of carelessness and negligence on his part."

There was evidence before the jury tending to prove contributory negligence. Every circumstance from which the death resulted was before the jury, and it was for them to determine therefrom whether the negligence of deceased was a contributing cause. Such an instruction has been disapproved in several recent cases. *Moberly v. Railroad*, 98 Mo. 183; *Rapp v. Railroad*, 106 Mo. 428; *Myers v. City of Kansas*, 108 Mo. 487.

II. It is difficult from the petition to tell whether the pleader intended to count upon negligence of defendant as a common carrier of passengers, or upon negligence in the mere management and operation of its cars. It is clear, however, that the case was tried upon the theory that deceased was a passenger and entitled to the high degree of care a carrier owes to a passenger. This is shown by the evidence introduced by plaintiff and by the instruction asked by her, and given by the court. The theory of the defense is that deceased never became a passenger, and its duty to him was only that of proper diligence to avoid injuring him when his danger became apparent. Evidence was offered by defendant with a view of sustaining its theory. The court at the request of plaintiff gave this instruction:

"3. The jury should determine from all the evidence whether Joseph Schepers attempted to take passage on one of defendant's trains of cars, and if they so find, whether said defendant or any agent, officer, servant or employee of defendant, whilst running, conducting and managing the car or train upon which he attempted to take passage, failed to exercise the utmost diligence, care and foresight of very cautious persons under like circumstances, and the absence or want of such diligence, care and foresight would render the defendant liable if Joseph Schepers came to his

death thereby, if the jury believe and find from all the evidence that said Joseph Schepers used ordinary care for his own safety."

It will be seen that this instruction required, as a test of defendant's duty, the high degree of care due from a common carrier to a passenger under its protection. Indeed, the instruction goes even beyond the limit of care required of carriers of passengers under the rulings of this court. *Furnish v. Railroad*, 102 Mo. 450; *Smith v. Railroad*, 108 Mo. 249; *Jackson v. Railroad*, 108 Mo. 224.

From the measure of care required of defendant it is manifest that the instruction was intended to apply to the relation of passenger and carrier. In effect, the jury was instructed that if deceased "attempted to take passage on one of defendant's trains of cars," he thereby became a passenger. Defendant insists, not only that this test of what constituted the relation of carrier and passenger was improper, but that there was a total failure of proof that the relation was ever created.

It must be conceded that there is difficulty in many cases in determining when the relationship of carrier and passenger begins, and what acts of the parties are sufficient to create it. The difficulty is greater in case the carrier operates a street railway, having no regular stations or station agents authorized to make contracts. In respect to such carriers passage must be taken hastily, on the streets, at points prescribed by the rules of the carrier or by the police regulations of the municipality. Yet, one test applies alike to all, and that is, the relation can only be created by contract between the parties, express or implied. There must always be an offer and request to be carried on one side, and an acceptance on the other. 2 Shearm. and Redf. on Negligence [4 Ed.], sec. 488; Patterson's Railway

Accident Law, secs. 210, 214; 2 Am. and Eng. Encyclopedia of Law, p. 742.

A passenger has been defined to be "a person whom a railway, in the performance of its duty as a common carrier, has contracted to carry from one place to another place for a valuable consideration, and whom the railway, in the course of the performance of that contract, has received at its station or in its car, or under its care." Patterson's Railway Accident Law, sec. 210. In our state probably the words "for a valuable consideration" do not govern. *Buck v. Railroad*, 108 Mo. 179, and cases cited. But the case at bar does not require us to go into that phase of the law.

It is true that an acceptance must, in many cases, be implied. When a street car has stopped at a usual place for receiving passengers an acceptance of all persons who are waiting to take passage must be implied, as it may be impossible for each to be separately recognized. So "where a person intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform." Booth on Street Railway Law, sec. 326; *Smith v. Railroad*, 32 Minn. 2.

It is well said by SMITH, P. J., of the Kansas City court of appeals, in speaking of the duty of a carrier by street railways: "It is bound to see every passenger who attempts to get upon its cars while they are standing still, but they are not so bound after the car is in motion. The safety of the train and those who are already on board requires that the gripman should be on the lookout ahead, while the conductor should be occupied with collecting fares, receiving requests to

stop, and the like, rather than looking out for the safety of those who may attempt to get on board after the train has started." *Meriwether v. Railroad*, 45 Mo. App. 534.

The ordinances of the city and the rules of the defendant fixed the stopping places for receiving passengers at the far cross walk of the streets. At these points those in charge of the cars are required to look out for persons desiring to take passage. If no one presents himself in time, and makes known a desire to take passage, the cars are not required to be stopped, and the employees in charge may give attention to their other duties. The cars would not have to be stopped for one desiring to take passage if he failed to make his wishes known in time to enable them to stop at the proper place.

It follows from what has been said that plaintiff did not become a passenger by a mere attempt on his part to board the car while in motion, as is declared by this instruction. There must have been some act on the part of the carrier indicating an acceptance. *Stager v. Railroad*, 119 Pa. St. 70.

III. Defendant insists further that there was a total failure of proof that deceased ever became entitled to the care due to a passenger, and after a careful review of the evidence, we have reached the same conclusion.

The evidence shows conclusively that deceased was not on the street when the motor car passed over the crossing, which was the proper stopping place for receiving passengers. When he came out of the saloon, according to the evidence most favorable to plaintiff, the trailer was passing over the crossing, and running three or four miles per hour. Up to that time he had not been seen by the motor man or the conductor on either car. He ran southwardly, with one hand raised, in the direction of the motor car. There was no evidence

that he was ever seen by the motor man or the conductor on the trailer. No slacking of the speed of the train was shown, or other act indicative that the train would stop, or that he was accepted as a passenger. It was shown that the conductor on the motor car saw deceased when he got within from five to ten feet of it. But there was no evidence that anything was done by this conductor indicating an intention to stop for him. Indeed, the complaint in the petition is that the conductor "willfully and negligently failed and neglected to ring the bell or give any notice to the motor man that said Joseph Schepers was going to get on the train, or stop the cars." In spite of this neglect of the conductor, and refusal to stop, or recognition of the right of deceased to take passage, he undertook to board the car. It might be a question, in a proper case, whether, in the circumstances, it was the duty of the conductor to have stopped the train, and, whether, upon a failure to discharge such duty, the carrier would not have been liable for a breach of its duty to the public. But that neglect did not make deceased a passenger or justify his actions. He could not in this manner, by his own act alone, constitute himself a passenger and thus secure the high degree of care due from a carrier to a passenger. *Baltimore Traction Co. v. State to use,* 28 Atl. Rep. (Md.) 397, and cases cited. Under the evidence, we think the relation of carrier and passenger was never created.

IV. Defendant also insists that the evidence shows conclusively that deceased was guilty of such contributory negligence as should bar a recovery. It can not be said, as a matter of law, that a person of the age, physical development and experience of deceased, would be guilty of contributory negligence in attempting to board a street car moving at no greater speed than three or four miles per hour, though propelled

by electric power. Making such an attempt would, undoubtedly, be evidence of negligence, but whether it was a contributing cause of the injury should be for the triers of fact to decide. The person making the attempt could only be held to assume the risk of injury from the ordinary movements of the car. Booth on Street Railway Law, sec. 336; *Briggs v. Railroad*, 148 Mass. 75; *Morrison v. Railroad*, 130 N. Y. 169.

V. In regard to the alleged negligence of defendant in failing to provide its cars with the Johnson fender, we may say that the evidence shows that said fender was designed solely for the protection of passengers and employees, and as deceased was neither, defendant did not owe to him the duty of supplying it, unless it were found as a fact that such failure amounted to a want of ordinary care toward the general public in the management of the railway. Reversed and remanded. All concur.