ANNA HOLZENKAMP v. CINCINNATI TRACTION Co.*

For the purpose of responsibility for negligent acts producing injury the relation of carrier and passenger begins when a person, intending in good faith to take passage, and with the express or implied assent of the carrier, places himself in a position necessary to avail himself of the facilities for transportation which the carrier offers; but the fact of physical contact with the car is not an indispensable criterion of the carrier's liability.

HOSEA, J.

Motion for new trial.

This motion raises an interesting question, by no means easy of solution, namely: When and under what precise circumstances does one who intends to take passage upon the vehicle of a common carrier become a passenger to an extent entitling him to recover for injuries received through negligence of the carrier, under the law applicable as between carrier and passenger?

In the case at bar the plaintiff, with others, had gone to a near-by street crossing, where defendant's cars usually took up passengers, and stood near the track for the purpose of taking passage on said cars; and after the car had stopped for the purpose of taking them on board, and while the plaintiff, who had approached the car for the purpose of entering it, was about to do so, she was struck and severely injured by a falling trolley pole, dislodged and broken by the conductor who was shifting the trolleys from one set of wires to another.

The charge excepted to is as follows:

"(1) If the jury finds from the testimony that the plaintiff had gone to the corner of Franklin avenue and Harrison avenue, and that thereupon the car of defendant came to said point and stopped for the purpose of taking the plaintiff aboard as a passenger, and that it was at a point near a cor-

---

* Affirmed by Supreme Court, 74 O. St. ——.

ner where the cars of the defendant were in the habit of stopping to take on passengers, and that plaintiff was standing in the street adjacent to and by the car track along which the car came going to the city, and that the plaintiff intended to get on the car and was about to do so, and the car stopped at the point where she was standing to enable her to do so; and if the jury find that just as the plaintiff was about to step on the car she was struck by the broken or falling trolley, then I charge you, that, for the purposes of this case, the plaintiff was a passenger on the car, and if the plaintiff was then and there struck and injured by the trolley breaking and falling upon her from said car, that a presumption arises in the absence of other proof that the traction company was guilty of negligence."

In the argument, objection is taken to the phrase "about to step upon the car," in which the word "about," used without any qualification, is thought to be misleading, because it does not necessarily mean actual physical contact with the car, in the act and with the intent of becoming a passenger thereon, which contact is assumed to be essential to the relationship of carrier and passenger. This narrows the inquiry to this, namely: Whether actual physical contact with the car, in the case of one in the act and with the intent of entering it, as a passenger thereon, is a necessary predicate of recovery?

Suppose that two intending passengers, about to take passage, under precisely the same circumstances, were injured by the falling of a trolley pole; and, of these two, one had a foot upon the step in the act of entering the car, and the other, although fairly in the act of entering the car, had not yet come in actual physical contact with the car; upon what rational principle should the one be entitled to recover for the injury and not the other?

We may admit, as a correct legal proposition, that the relation of carrier and passenger arises out of the passenger's submission of himself to the carrier for safe transport. In respect of injuries occasioned by the sudden and untimely starting of cars before passengers have gotten fairly aboard,

physical contact is made a prominent feature in decisions of courts thereon; but this is so, because this fact is the *sine qua non* of the injury itself. These cases, therefore, can not be accepted as authority for the proposition that physical contact is an exclusive prerequisite to recovery, in all cases; so that, even if, for the purpose of discussion, we accept physical contact as a general rule of decision, it must be with the understanding that it is subject to well-recognized exceptions, or, to use the language of a well-considered case to which I shall advert, that "it is not an inflexible rule."

Thus the principle is well established that the relation of carrier and passenger begins when one enters upon the premises of the carrier with intent to take a train or car in due course.

In *Gordon* v. *Railway,* 40 Barb., 546, the principle is thus expressed:

"Neither an entry into the cars upon a railroad, nor the payment of fare, is essential to create the relation of carrier and passenger. Being within the waiting-room, waiting to take the car, is as effectual to make one a passenger as if he were in the body of the car."

See also in general support of this principle: *Pitts & L. E. Ry.* v. *Gongwahr,* 1 O. S. C. D., 30 (22 Bull., 280); *Chicago & E. I. Ry.* v. *Jennings,* 89 Ill. App., 335; *Illinois C. Ry.* v. *Treat,* 75 Ill. App., 327; *Jeffersonville, etc., Ry.* v. *Riley,* 39 Ind., 568; *Barth* v. *Railway,* 142 Mo., 535 (44 S. W. Rep., 778); *Choate* v. *Railway,* 67 Mo. App., 105; *Exton* v. *Railway,* 63 N. J. Law, 356 (46 Atl. Rep., 1099).

The case of *Haselton* v. *Railway,* 71 N. H., 589 (53 Atl. Rep., 1016), is also instructive in this connection. It there appeared that a short board walk or platform—part of a public street—was utilized by a street railway for receiving and discharging passengers. A car, having stopped a little short of its proper position, an intending passenger walked back alongside the car to find a seat, but stepped off the end of the walk or platform and was injured. The defense was, among other things, that the man had not attained

physical contact with the car and was, therefore, not a passenger.   But the court said, page 1017:

"Physical contact with the car was not necessary to constitute the plaintiff a passenger, and entitle him to the care due to that relation.   *Rogers* v. *Steamboat Co.*, 86 Me., 261 (29 Atl. Rep., 1069; 25 L. R. A., 491); *Allender* v. *Railway*, 37 Iowa, 264; *Smith* v. *Railway*, 32 Minn., 1 (18 N. W. Rep., 827; 50 Am. Rep., 550); 4 Elliott Railroads, 2460; Booth, St. Rys., Section 326; Joyce, Elec. Law, Section 528."

By way of emphasis, this point is restated in the syllabus, as an independent proposition, as follows:

"It is not necessary that a person should have come in physical contact with a street railway car to constitute him a passenger and entitle him to the care due to that relation."

The principal ground of decision, however, was, that the company, having adopted and utilized the platform in question, it was, to all intents, their premises as to passengers and, therefore, the case was decided upon the principles exemplified in *Gordon* v. *Railway, supra.*

But, underlying these and other cases, is the broader principle, that, for the purposes of responsibility for negligent acts producing injury, the relation of carrier and passenger begins when a person, intending in good faith to take passage and with the express or implied assent of the carrier, places himself in a position necessary to avail himself of the facilities for transportation which the carrier offers.   In the cases last cited, entrance upon a waiting platform or premises is the criterion of acceptance of the carrier's offer, and establishes the contractual relation as against negligence.   But in the case of ordinary street cars, why should not the contractual relation be considered as established within what may be termed the *sphere of peril* incident to street cars, whenever a person has signaled a car and, in response thereo, the car has stopped to take the

passenger aboard? In this suggestion lies, I think, the true criterion of decision in such cases.

Thus, in *Smith* v. *Railway,* 32 Minn. (18 N. W. Rep., 827; 50 Am. Rep., 550), it is said:

"The rule is not inflexible that to entitle a person to such protection he must be actually within the vehicle or upon some portion of it. Otherwise he might, in good faith, and in the exercise of due care, place himself in a position of peril while in the act of taking passage, upon the consent and invitation of the carrier, and the latter be bound to the exercise of ordinary care only. *Brien* v. *Bennett,* 8 Car. & P., 724; *Allender* v. *Railway,* 37.Iowa, 264; *Gordon* v. *Railway,* 40 Barb., 546; *Commonwealth* v. *Railway,* 129 Mass., 501; Thompson, Carriers, 42; Hutchinson, Carriers, Section 556; Shearman & Redfield, Negligence, Section 262."

The principle here indicated is more elaborately discussed in *Keator* v. *Traction Co.,* 191 Pa. St., 102 (43 Atl. Rep., 86; 44 L. R. A., 546; 71 Am. St. Rep., 758), arising, however, upon a state of fact in some respects different. The passenger held a so-called "transfer" from one line to another owned by the same company, separated by a city block. It was conceded that during the passage from one line to another, the party was not under the care of the company, but on reaching the point where she was to take the second car, and when going toward it from the street curb, and when about five feet distant from the car, she was injured by a falling trolley pole, just as in the case at bar. I quote the following from the opinion of Mr. Justice Dean, page 87:

"But, taking the undisputed facts, was the plaintiff's relation to defendant, at the time of the injury, that of a passenger? If so, then the burden was on defendant to show it had exercised a high degree of care towards her because of that relation. It offered no evidence as to the strength of the trolley pole—whether it had been subject to inspection at any time, whether age and constant use had destroyed the tenacity of its fiber, or even whether it was ever safe for its purpose. The fact stood out, undisputed,

that, in manipulating the pole in the usual way, it broke, and injured plaintiff. * * * Unquestionably, the carrier is not answerable for the condition of the highway on which the passenger alights, or from which he stands or steps before entering the car; nor is it answerable for the conduct of third persons who, by neglect, cause injury in such situation to the passenger. But, in the case of these particular conveyances (electric cars) necessarily, and immediately on the car stopping at the end of the route, the motorman proceeds to reverse the trolley. Ordinarily, this is attended with no danger to any one. The act is performed while some of the passengers have alighted and are on the sidewalk, out of reach of the trolley pole; some are between the curb and the car, and probably some yet in the car. Can it be argued with any plausibility that, in changing the trolley pole, the carrier owes no duty to its passengers who are not out of reach of danger from a part of the very vehicle in which they have been carried? Clearly, the duty to the passenger, under such circumstances, with that kind of vehicle, does not end the moment the passenger's foot touches the street. And so with the next starting car. She has traversed the sidewalk, and is on the pavement * * * the car moves up to the end of the line in front of her, and stops; she steps outside the curb, and moves towards it; the seats are being reversed; two or three passengers are already in the car; when within four or five feet of it, she is struck by the broken pole, which of necessity is being changed. *Why is she within reach of this peril? She is not a traveler on the highway, is not a resident who desires to cross the street; is not a mere spectator who, from curiosity or idleness, stands in that position with reference to the car. She is there because, under the stipulations of the contract then in her possession, she has a right to take passage on that particular car at that point. In no sense is she one of the general public on the highway. She is at that point, at that particular juncture, because she could not receive the consideration of her contract, * * * if she were anywhere*

*else. If it were not for her contract, she would not be there at all. Surely, in such situation, under such circumstances, the carrier's duty to her was what it owed to a passenger*—as much so as if her injury had been caused by a rotten step on the car. *When she came within reach of the vehicle provided for her transportation, the carrier's duty was that she should not be injured by the vehicle, if the highest degree of care could prevent it.* Such care appellant was bound to show affirmatively. It did not attempt to show it. Therefore it is answerable in damages for her injury."

I have italicised some of the latter sentences of this opinion which confirm the view I have hereinbefore indicated, namely: That where the party has come within the sphere of danger from such accidents as happened, at the invitation of the carrier, and as a necessary preliminary to entering the car, the relation of passenger is established as against negligence of the carrier. In such a case the responsibility of the carrier rests upon a principle analogous to estoppel—as where one, by representation or conduct, has induced another to alter his position to his detriment.

The principles enunciated in *Keator* v. *Traction Co., supra,* apply, as it seems to me, with equal force to an intending passenger, who has taken a position near the track, hailed the car, and the car has stopped to enable him to get aboard. Here is—under the custom and the necessary conditions inherent in the business—a proposition on one side and acceptance on the other. The passage contract is complete. The further facts as to boarding the car and paying the passage money relate to the execution and not to the making. They are *evidential* facts merely, and not *conditions precedent* to the completion of the legal obligation.

This I understand to be the basis of Lord Abinger's ruling in *Brien* v. *Bennett,* S. C. & P., 724, where a gentleman who has hailed and stopped an omnibus, and "just as he was putting his foot on the step," was thrown down and injured by the starting of the vehicle. The court said:

"I think that the stopping of the omnibus implies consent to take the plaintiff as a passenger and that it is evidence to go to the jury."

A similar state of fact arose in *Gordon* v. *Railway*, 175 Mass., 181 (55 N. E. Rep., 990, 991), in which Justice Holmes, now of the United States Supreme Court, said:

"The judge was right in his ruling as to the deceased being a passenger. He was a passenger, if the car had stopped for him and he was in the act of getting aboard when the car started."

In *Gordon* v. *Railway, supra,* there was testimony that the man had one foot on the running-board; but, as the chief justice ignores this fact, and as it appeared that the testimony was conflicting and contradictory as to details, his expression of the law must be understood as clearly independent of the fact of physical contact.

In *Schaefer* v. *Railway*, 128 Mo., 64, 71 (30 S. W. Rep., 331, 332), the court, in commenting on *Schepers* v. *Railway*, 126 Mo., 665 (29 S. W. Rep., 712), uses this language:

"The offer must be made to become a passenger on one part, and an acceptance on the part of the company of the passenger on the other, before the relation of carrier and passenger can be said to exist."

In *Schepers* v. *Railway*, 126 Mo., 665 (29 S. W. Rep., 712, 714), the statement of the rule is as follows:

"It is true that an acceptance must, in many cases, be implied. When a street car has stopped at a usual place for receiving passengers, an acceptance of all persons who are waiting to take passage must be implied, as it may be impossible for each to be separately recognized. So 'where a person intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform.' Booth, St. Railways, Section 326; *Smith* v. *Railway*, 32 Minn., 2 (18 N. W. Rep., 827)."

While in neither of these cases was the precise point under discussion here involved, yet the form of statement seems necessarily to exclude the recognition of the rule of physical contact as a prerequisite to recovery.

In this court there is a decision made in 1898, and the only one in Ohio courts, so far as I am aware, that may be regarded as in point, though the statement is brief and the facts not given, namely, the case of *Carney* v. *Railway*, 8 Dec., 587, in which there is this expression:

"It was claimed by the defendant company, that Carney had not intended to or had not become a passenger, but if he had signaled the car and the car had stopped for him, he had virtually become a passenger."

The passenger in that case, as I find upon investigation, was injured by the falling of the signboard from the car, and in this respect the case is similar to the one at bar.

The case of *Donovan* v. *Railway*, 65 Conn., 201 (32 Atl. Rep., 350; 29 L. R. A., 297), although complicated by defects of pleading and other matters affecting the decision, is cited as an opposing authority; but I do not so understand it. The facts differed so widely from those at bar, that it did not necessarily call for an expression especially applicable, yet the language is (page 351):

"His (the carrier's) special duty begins when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of passenger to carrier is assumed."

This case and the somewhat similar one of *Mitchell* v. *Railway*, 4 Misc., 575 (25 N. Y. Supp., 744), do not seem to be in line with the principles, deduced from the weight of authority and reason applicable to cases of this nature, where, as expressed in *Smith* v. *Railway, supra,* the intending passenger might, "in good faith, and in the exercise of due care, place himself in a position of peril while in the act of taking passage, upon the consent and invitation of the carrier."

This basic rule is in harmony with fundamental principles applicable to all carriers alike, and is consonant with

reason and justice.   Where physical contact with the car is not a necessary condition of the injury, it is not a criterion of the carrier's liability.

Applied to the case at bar, it is fatal to the motion. Motion for new trial denied.

*C. W. Baker,* for plaintiff.
*J. R. Foraker,* for defendant.