## Chicago & E. I. R. R. Co. v. George F. Jennings, Adm'r.

1. REASONABLE CARE—*Exercise of, a Question of Fact.*—The matter of care and caution exercised by a person injured or killed by a railroad train is a question for the jury, and where the evidence is conflicting, and reasonable and fair-minded persons, acting reasonably, may reach different conclusions, it is proper to submit the case to a jury.

2. SAME—*To Look Out for Passing Trains.*—Whether a person about to pass a railroad track in a populous city, to take passage on a suburban train, should look out for passing trains on adjacent tracks is, under the circumstances of this case, a question for the jury.

3. SAME—*No Established Rule as to What a Person Should Do Under all Circumstances.*—It is impossible to lay down a rule of law as to what particular thing a person ought to do for his protection in the diversity of cases constantly arising, and the question what a reasonably prudent person would do for his own safety under the circumstances of each case must be left to the jury as a question of fact.

4. NEGLIGENCE—*Running a Freight Train Past a Station While a Passenger Train is Receiving Passengers.*—It is negligence in a railroad company to run a freight train at a high rate of speed past a suburban station where a passenger train is receiving or discharging passengers.

5. SAME—*In the Management of Trains.*—A jury is justified in finding a railroad company guilty of negligence for running its trains at a speed in violation of an ordinance or of its own rules, or in running them, at the rate of twenty or twenty-five miles an hour, past a passenger train stopping at a suburban station for the purpose of receiving or discharging passengers.

6. EVIDENCE—*Sufficient to Show that a Deceased Person was Received as a Passenger.*—The fact that a ticket good for passage on the train was found in the pocket of a person killed while in the act of taking passage upon a suburban train is sufficient proof to support the allegation that he was received as a passenger by the company, in connection with the fact that he was on premises which the company had appropriated and used for the purpose of receiving and discharging passengers and for their convenience.

7. PRESUMPTIONS—*Knowledge of Railroad Rules by Passengers and the Right to Rely upon Their Observance.*—A person, for a number of years in the habit of riding upon a suburban train almost daily, is presumed to have knowledge of the rules of the company relating to the passage of trains and of receiving and discharging passengers at suburban stations, where he was in the habit o' taking the train, and he has a right to rely upon the observance of such rules by the servants of the company.

8. CARRIERS OF PASSENGERS—*When the Responsibility Begins.*—The relation of passenger and carrier begins when a person enters upon the premises of the carrier for the purpose of taking a train, and any place where the carrier has been accustomed to receive passengers is to be considered as such premises.

9. SAME—*Duty Toward Passengers.*—Where a person is received as a passenger it is the duty of the carrier to exercise the highest care to avoid injuring him.

**Action in Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed May 21, 1900.

Statement by the Court.—George M. Jennings was, on April 16, 1894, killed by appellant's passenger train going south, at the intersection and crossing of appellant's railroad and Seventy-sixth street, a public street of the city of Chicago, while he was proceeding across appellant's railroad tracks to take its suburban passenger train going north, and either stopped or on the point of stopping at its depot, near the crossing, the train, at the time of the accident, extending over and upon the whole or a part of the crossing.

His administrator brought suit for the benefit of his widow and next of kin, a trial of which, before the Circuit Court and a jury, resulted in a verdict against appellant for $4,800 and judgment thereon, from which this appeal is taken. The declaration consists of five counts, in each of

C. & E. I. R. R. Co. v. Jennings.

which it is averred that the defendant, at and upon the intersection and crossing of the railroad and Seventy-sixth street, and near to appellant's Seventy-sixth street depot, did receive Jennings, in his lifetime, upon its premises as a passenger, to be safely conveyed and carried upon a journey from thence to Dearborn station, Chicago, upon its certain train, which was then and there about to arrive at and stop and wait at the Seventy-sixth street station or depot to receive Jennings and other passengers to convey and carry them to their several destinations. The first count also avers, in substance, that it was appellant's duty to allow Jennings to safely cross the railroad track while going to the depot, and to have allowed and permitted him to safely take and mount appellant's train of cars, which was then and there about to arrive at said station, and to have carefully and safely carried him on his said journey, but that while Jennings was, in the exercise of due care and diligence, then and there walking upon and across said Seventy-sixth street at said crossing of the same and said railroad to reach and mount appellant's said train, defendant, by its servants, negligently and improperly drove, managed and ran a certain other engine and train of cars in a southerly direction over and upon said railroad up to, upon and over said crossing, by means whereof the said last mentioned engine and train of cars struck said Jennings and killed him. The second count has substantially the same allegations, except that the negligence charged was in going at a very high, fast, unlawful and negligent rate of speed over said crossing, to wit, thirty-five miles per hour, in violation of the city ordinance (which is set out in full), limiting the rate of speed at the place in question, of passenger trains, to thirty miles per hour. The third count has similar allegations, and the negligence alleged is not keeping stationed at the crossing a flagman. The fourth count contains, in substance, the same allegations, and the negligence charged is in failing to ring a bell of at least thirty pounds weight, or sound a whistle at the distance of at least eighty rods from the crossing, contrary to the statute,

etc.   The fifth count contains the same allegations, in substance, and the negligence alleged is that the defendant failed to ring a certain bell in the tower or tower house, which was maintained and kept at and near the crossing. The plea was the general issue.

At the close of the plaintiff's evidence, appellant asked an instruction directing a verdict of not guilty, which was refused.   The same instruction was asked at the close of all the evidence, and again refused.

W. H. LYFORD and S. A. LYNDE, attorneys for appellant.

A passenger at a station, crossing tracks, can not do so blindly, without exercising any care.   C., B. & Q. R. R. v. Mahara, 47 Ill. App. 208; 4 Elliott on Railroads, p. 2550; Gonzales v. R. R. Co., 38 N. Y. 440; Wheelwright v. R. R. Co., 135 Mass. 225; Debbins v. R. R. Co., 154 Id. 402; Connolly v. R. R. Co., 158 Id. 8; Penn. R. R. Co. v. Bell, 122 Pa. St. 58.

Even a passenger is bound to use ordinary care for his safety in crossing tracks at a station to take his train.   C., St. P. & K. C. Ry. Co. v. Ryan, 165 Ill. 88; Terry v. Jewett, 78 N. Y. 338; Debbins v. O. C. R. R. Co., 154 Mass. 402; Connolly v. R. R. Co., 158 Id. 8; Penn. R. R. Co. v. Bell, 122 Pa. St. 58; So. Ry. Co. v. Smith, 86 Fed. Rep. 292.

EDWARD J. DAHMS and WING & CHADBOURNE, attorneys for appellee.

The responsibility of a carrier begins when the passenger presents himself for transportation; and this he may be said to do when he approaches the place of reception for the purpose.   Cooley on Torts, 770.

Neither the purchase of a ticket nor the entry into the car is essential to create the relation of carrier and passenger.   Norfolk & W. R. R. Co. v. Galligher, 89 Va. 643; Wabash, St. L. & P. R. R. Co. v. Rector, 104 Ill. 301; B. & O. R. R. Co. v. State, 60 Md. 463.

The relation of passenger and carrier commences when the traveler goes into the carrier's premises and purchases

a ticket for the purpose of taking a train.    Lent v. N. Y. Cent. & H. R. R. Co., 120 N. Y. 467.

A person who has not purchased any ticket because told by the ticket agent to pay on the train, is nevertheless a passenger while going across the track as directed by the agent, to get on a caboose, and struck while passing between some cars.    Allender v. C., R. I. & P. R. R. Co., 37 Ia. 264; Johns v. Charlotte, C. & A. R. R. Co., 39 S. C. 162.

One who offers to buy a ticket of the agent at a depot is entitled to the courtesy and protection which is due to a passenger from the moment of entering the premises.    Norfolk & W. R. R. Co. v. Galliher, 89 Va. 643.

And the same doctrine seems to be implied in the decision that a railroad company is responsible for the safety of the regulation, where it has allowed a custom to receive passengers on both sides of the track, where there is no station platform.    Phillips v. Rensselaer & S. R. R. Co., 57 Barb. 644.

It is not necessary to the existence of the relation of carrier and passenger that the contract should be actually consummated either by payment of fare or entry into the cars or vessel of the carrier.    Going into the depot or waiting room of defendant and waiting for means of conveyance with the *bona fide* intention of becoming a passenger is sufficient to cast upon the defendant the duty of treating the plaintiff as a passenger.    Gordon v. Grand St., etc., R. R. Co., 40 Barb. 546; Thompson on Carriers of Passengers, 43.

The purchase of a ticket is not essential to constitute one a passenger entitled to such protection.    That one has entered the station waiting room and informed the master of his desire, etc., may suffice.    Allender v. C., R. I. & P. R. R. Co., 37 Iowa, 264; Redfield on Law of Carriers, 6th Ed., Vol. 2, page 245.

Being within the waiting room, waiting to take the cars, is as effectual to make a person a passenger as if he be within the body of one of the cars.    Having purchased a ticket, the waiting at the regular place of departure to take the cars constitutes one a passenger.    Rapalje and Mack's

Digest of Railway Law, Vol. 2, page 311; Cent. R. & D. Co. v. Perry, 58 Ga. 461.

One who goes into the station within a reasonable time prior to the hour of departure of the train with the *bona fide* intention of becoming a passenger, is entitled to the care and the rights of a passenger, at least so far as the safety of his person from defects in the station platforms. etc., is concerned.    N. & W. Co. v. Groselose, 15 Va. L. J. 645.

Certainly, when one has made a contract for passage upon a vehicle of a common carrier and has presented himself at the proper place to be transported, although he has not entered the cars or stage, whether wrongfully prevented therefrom or not, he is a passenger, and while waiting for the train to set out he is, as to all duties of the company toward him directly involving his safety, entitled to extraordinary diligence, and as to all duties involving merely his convenience or accommodation, to ordinary diligence.

It has sometimes been said that a passenger at the end of his journey retains the same relation to the carrier until he has left the carrier's premises.    Dewire v. Boston & Maine R. R. Co., 148 Mass. 343;  Am. H. & I. R. R. Co. v. Carper, 11 West R. 225.

The running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment.    It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving.    Chicago & A. R. R. Co. v. Kelly, Admx., 80 Ill App. 675.    See also Illinois C. R. R. Co. v. Nowicki, 148 Ill. 29, and cases cited; Chicago & N. W. R. R. Co. v. Hansen, 166 Ill. 623.

It can not be said as a matter of law, that a traveler is bound to look or listen, because there may be various modifying circumstances excusing him from so doing.    Partlow v. Illinois C. R. R. Co., 150 Ill. 321; Chicago & N. W. Ry. Co. v. Hansen, 166 Ill. 623.

MR. JUSTICE WINDES delivered the opinion of the court.

On behalf of appellant it is claimed that there was error, first, in not directing a verdict for appellant; second, in the admission of evidence; and, third, in the refusal of instructions asked by appellant, and also in the modification of certain instructions requested by it.

Under the first point, it is argued that Jennings failed to use the slightest care and caution for his own safety. We think the matter of Jennings' care was a question for the jury, and under the evidence, which is somewhat conflicting, reasonable and fair-minded persons might, acting reasonably, have reached different conclusions; and this being so, the case was properly submitted to the consideration of the jury. R. R. Co. v. Kelly, 80 Ill. App. 675, affirmed, 182 Ill. 267, and cases there cited; Offut v. Col. Exp. Co., 175 Ill. 472; Pa. Co. v. McCaffrey, 173 Ill. 169.

The evidence shows that Jennings at the time of his death was sixty-five years of age, and had been in the habit of taking appellant's suburban trains at its Seventy-sixth street station almost daily for a period of nearly five years at or about 7:37 A. M., to go to his work, which was that of a glass bender at Fifty-ninth street and Union avenue, nearer the heart of the city than Seventy-sixth street. In his pocketbook, in the pocket of a suit which he was wearing at the time of the accident, there was found a commutation ten ride ticket from Auburn Junction to Fifty-ninth street, with one ride unused. This ticket was the one ordinarily used on appellant's railway between Seventy-sixth and Fifty-ninth streets.

At Seventy-sixth street appellant's depot is upon the east side of its tracks, which consist of four main tracks, a spur and two cut-offs, the two easterly tracks being used for passenger trains, the most easterly being for north-bound trains and known as track No. 1, the next to the west being for south-bound trains and known as No. 2, and the two tracks still to the west being for freight trains. Directly east of track No. 1, extending from that track to the depot on the east, is a platform made of two-inch planks on a

level with the top of the rails extending north from the sidewalk crossing about 100 feet, at the north end being about ten feet wide and at the south end being about seventeen or eighteen feet wide. To the west of the north-bound track on the same level and extending from the north-bound to the south-bound track, from Seventy-sixth street sidewalk, about 100 feet north, is a similar platform. Substantially the whole crossing of Seventy-sixth street is covered by similar planking, on the same level with the platforms, extending across all of appellant's tracks and reaching to the north sidewalk of the crossing, and making a continuous platform of planking between tracks Nos. 1 and 2, from a point about 100 feet north of Seventy-sixth street to the south line of said street, and a similar continuous platform and planking on the same level east of and immediately contiguous to track No. 1, from a point 100 feet north of Seventy-sixth street to the south line of the street, with the exception of a narrow space between the south sidewalk and the planking of the street crossing proper between the rails of track No. 1, and also to the east of the east rail of track No. 1. The north sidewalk of Seventy-sixth street joins the east rail of track No. 2, and there is a small space between this sidewalk and the planking of the street crossing extending from the east rail of track No. 2 toward the west. All this planking between tracks Nos. 1 and 2, including the sidewalks on both sides of Seventy-sixth street, was commonly used by persons in the habit of taking or leaving appellant's suburban trains at this point, and Jennings, during all the time he had taken these trains at this station, was in the habit of approaching this platform between the tracks Nos. 1 and 2 from the west on the north sidewalk of Seventy-sixth street, his home being at a point northwesterly from the intersection of Seventy-sixth street and appellant's railroad tracks. He usually and ordinarily took appellant's north-bound suburban train leaving the Seventy-sixth street station at 7:37 A. M., and at the time he was killed was on his way to take this train, going along the north sidewalk, and was struck

by appellant's south-bound train, either as he stood very near the west rail of the south-bound track, or just as he was in the act of stepping across this track on the sidewalk connecting with the platform beyond it to the east.

The north-bound train was about on time, but the south-bound train, which struck Jennings, as we think a preponderance of the evidence clearly establishes, was several minutes behind time. These trains usually and ordinarily passed each other when on time at or about Eighty-first street, which is five blocks to the south of Seventy-sixth street, and several of the witnesses testify that they never knew, although they were familiar with the running of the trains at this point, of this south-bound train passing Seventy-sixth street at the time the north-bound train was stopping there or about to stop there. The north-bound train was scheduled to stop at this station at or about the time that it did actually stop on the morning of the accident, but the south-bound train was not scheduled to stop at this station. Appellant's engineer was an experienced man, had for some time been running this particular south-bound train, and must be presumed to have been familiar with the fact that the north-bound train was scheduled to stop at this station for the receipt and discharge of passengers, and in any event the evidence shows that he saw the north-bound train as he approached the station from the north, and could easily have seen, if he did not see, that the north-bound train was either stopped at the station or was in the act of stopping. He testified that this north-bound train was not a stranger to him, and he had seen it leaving there as his train would be coming up sometimes; that he knew perfectly well that this was not the place he commonly passed it; that it stopped at this station for passengers at about 7:37 A. M., as far as he recollected.

There were also offered in evidence two rules of the appellant company which were in force at the time, as follows:

" Rule 114. Great care must be exercised by train men of a train approaching a station where any train is receiving or discharging passengers."

" Rule 114a. On double track opposing trains must not pass while passengers are being received or discharged."

The engineer of the south-bound train was no doubt familiar with these rules, though he testifies that he did not remember of being told by one Friedlander that there was a rule prohibiting him from passing a train at a station. He should have been familiar with them. While it does not appear that Jennings was in fact familiar with these rules, from the fact that for five years preceding he had been in the habit of riding upon appellant's suburban trains almost daily, it is reasonable to presume that he knew of such a rule, and if he did, he had the right to rely upon its observance by appellant's servants. Moreover, because of his long daily habit of taking this particular north-bound train at this time, it must be presumed that he knew of the fact that the two trains usually and ordinarily passed each other at or about Eighty-first street, which was about half a mile to the south, and it is but reasonable that he should have expected that the south-bound train had already passed at the time he reached the vicinity of the station.

It also appears from the evidence that as he approached the station from the west and as he walked along the sidewalk across the spur, cut-offs and freight tracks, that the north-bound train was coming into the station, and at the time that he approached track No. 2, and as he stood very near it, there was considerable noise from the movement of the train and escaping steam, and that he was looking toward this train, some of the witnesses saying in an easterly, but most of them in a south-easterly direction. The preponderance of the evidence is that when the north-bound train came to a stop, the rear cars of it—the train being composed of some seven or eight coaches—extended partly across, if not entirely across, Seventy-sixth street. The engine of the south-bound train, as the evidence tends to show, struck Jennings either just as the north-bound train was stopped or about to stop, and we think the clear preponderance of the evidence is that at the time he was struck, the engine of the north-bound train and several of

the cars had already passed the north sidewalk of Seventy-sixth street.   The preponderance of the evidence shows, we think, that the whistle of the south-bound engine was sounded, some of the witnesses saying that it gave several shrill whistles near or north of Seventy-fifth street, in order to warn a colored man who was walking upon the tracks at a point near and south of Seventy-fifth street; and there is also evidence that a shrill blast of the whistle was given—the engineer says three or four short whistles and then a long one —as it approached Seventy-sixth street; also that he first blew the whistle as a warning to Jennings when the train was forty feet or more north of the crossing.   All of the witnesses who testified as to the circumstances attending the accident say that they heard the whistle of the south-bound train either north of Seventy-fifth street or as it was near Seventy-sixth street.   Most of these witnesses stood either at points on the platform or crossing east of track No. 1, or near the crossing on the west.

Other circumstances testified to by the various witnesses bearing upon the question of Jennings' care appear from the evidence, all of which we have carefully considered, and we can not say that a finding by the jury, considering all the evidence, that Jennings exercised such care as an ordinarily prudent person would have done, under the circumstances shown, can be said to be manifestly against the evidence.

Whether he should have looked to the north, under all the circumstances shown, was a question of fact for the jury, as has been repeatedly held by this and the Supreme Court.   Partlow v. R. R. Co., 150 Ill. 321; R. R. Co. v. Hansen, 166 Ill. 623; Pa. Co. v. Frana, 112 Ill. 398; C. & A. R. R. Co. v. Smith, 180 Ill. 453; N. C. St. R. R. Co. v. Nelson, 79 Ill. App. 229; I. C. R. R. Co. v. Batson, 81 Ill. App. 143.

In the Partlow case, *supra*, while the court says that it has been said in discussing a question of fact, it was the duty of a person approaching a railroad crossing to look and listen before attempting to cross, and that a failure so to do was negligence, it also says:

" The court can not say as a matter of law that the failure to look and listen is negligence. These facts are proper for the consideration of the jury in determining whether a person has been negligent, but it can not be said as a matter of law that a failure to observe such acts is negligence." (Citing cases.)

The same doctrine is re-affirmed in the Hansen case, *supra*, and the court says:

" It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under the circumstances must be left to the jury as one of fact."

On the matter of the speed of the south-bound train at and immediately preceding the time of the accident, there is a conflict in the evidence, the various witnesses placing the speed at from twenty to forty miles per hour. The engineer says he was running between twenty and twenty-five miles per hour. A brakeman on the same train said that it was running about twenty miles an hour. One of plaintiff's witnesses, who was engaged in the coal business at Seventy-sixth street for six years and entirely familiar with the running of trains, says that it was going about thirty-five miles per hour. Another, Johnson, who lived close by the tracks and was walking upon the south-bound track about half way between Seventy-fifth and Seventy-sixth streets, to warn whom the first shrill whistles were given, said the train was going at thirty-five or forty miles an hour. " She was flying." Another witness, an advertising agent, familiar with the running of railway trains, says that it was running thirty-five or forty miles an hour; that before it struck Jennings it seemed to be going a little slower, but it was coming very fast. The ordinance which was put in evidence limited the speed of passenger trains at this point to thirty miles per hour.

From a full consideration of the evidence we can not say that a finding by the jury that the speed of the train between Seventy-fifth and Seventy-sixth streets exceeded

thirty miles an hour, can be said to be manifestly against the evidence. But if it be conceded that the speed of the train was less than thirty miles per hour, and therefore not in violation of the ordinance, we are of opinion that under the first count of the declaration, which charges that the train was carelessly, negligently and improperly driven, managed and run, the claim of negligence generally is established by the evidence. The running of the train at all past the station was a violation of the rule of the company, which required that it should not pass the north-bound train while passengers were being received or discharged. There is evidence that the north-bound train had stopped for the purpose of receiving and discharging passengers, and that there were numerous passengers upon the platform and at the crossing waiting to take the train. Also, taking the evidence of the engineer that he was running at the rate of twenty to twenty-five miles per hour, that was a negligent rate of speed considering all the circumstances shown, and was in direct violation of the rule of the company, which required that "great care must be exercised by trainmen of a train approaching a station when any train is receiving or discharging passengers."

In the Kelly case, *supra*, it was said, Mr. Justice Wright delivering the opinion of the court, and which was adopted by the Supreme Court, that "the running of a freight train at a high rate of speed past a station where a passenger train is receiving and discharging passengers is so plainly negligent as not to require comment. It is equally negligent to so run a freight train just as the passenger train is pulling into the station, and more especially when the track on which the freight train is moving is between the depot and the track on which the passenger train is moving."

So we are of opinion in this case that the jury were justified in finding that the appellant was negligent not only because the train was run at a speed in violation of the city ordinance, but in violation of its own rules, and also in running past the north-bound train at the rate of twenty or twenty-five miles per hour, even if it had not stopped, but

was upon the point of stopping at the station, for the purpose of receiving and discharging passengers.

It is claimed by appellant's counsel that as it is alleged in each count of the declaration that Jennings was received by the appellant as a passenger, and because there was no evidence tending to prove this allegation of the declaration, there could be no recovery. We think the contention is not tenable for two reasons: First, because the evidence tends to show that Jennings was received as a passenger, and from it the jury were justified in finding that he was so received; and, second, the proof of the allegation was not necessary to a recovery in this case.

From the evidence partly hereinabove stated, while it appears that Jennings was not actually upon the platform between tracks Nos. 1 and 2, he was within a few feet of it, approaching it upon the sidewalk built of the same kind of material as the platform by the appellant, which platform was immediately adjoining the sidewalk between the tracks upon the same level therewith, and the sidewalk was immediately adjoining and connected with the planking which formed the street crossing, all of which crossing, including the said sidewalk, was habitually and commonly used by persons and passengers who were received and discharged from appellant's suburban trains. This, with the further fact that Jennings had for several years prior thereto been almost daily in the habit of approaching appellant's trains as well as leaving them, by this platform crossing and sidewalk, and that he had upon his person a commutation ticket which was good for passage upon appellant's railway trains, was sufficient proof to support the allegation that he was received as a passenger by the appellant. We think that under these facts it may be said that he was upon the premises of the carrier, at least premises which it had appropriated and used for the purpose of receiving and discharging its passengers, and for their convenience.

In 2 Wood's Ry. Law, 1037, it is said:

"It is not always easy to determine when the relation

of passenger begins, and it would seem from the cases that it is not necessary that a contract for passage should have been actually made, or the fare actually paid, in order to create the relation; but it is necessary that a person should be under the control of the carrier, in order to be entitled to its care as such. Therefore, a person can not be regarded as a passenger who is not upon the premises of the carrier."

In R. R. Co. v. O'Keefe, 168 Ill. 115, the court, in considering the question as to when the relation of passenger and carrier exists, says:

" One does not become a passenger until he has put himself in charge of the carrier and has been expressly or impliedly received as such by the carrier."

In Cooley on Torts, 770, the author says:

" The responsibility of a carrier begins when the passenger presents himself for transportation; and this he may be said to do when he approaches the place of reception for the purpose."

The following authorities hold in substance that this relation commences when a person goes upon the premises of the carrier for the purpose of taking a train and its premises are considered as any place where it has been allowed a custom to receive passengers, even where there is no platform provided; and that it is necessary only, in order to create the relation, that the person should be upon the premises of the carrier for present transportation and waiting to take the train.    Lent v. R. R. Co., 120 N. Y. 467–70; Allender v. R. R. Co., 37 Ia. 264–70; R. R. Co. v. Galliher, 89 Va. 639–43; Thompson on Carriers, 43; Dewire v. R. R. Co., 148 Mass. 343; Pa. Co. v. McCaffrey, 173 Ill. 169–73.

As we have seen by the several counts of the declaration, besides the allegation that Jennings was received as a passenger, it is averred that it was the duty of appellant to have allowed Jennings to safely cross the railroad track, to safely take and mount the train, and not to have negligently driven its engines and train of cars up to and over the crossing when Jennings was standing or walking over the crossing, with all due care and diligence on his part, for the purpose of reaching and mounting the north-bound train.    We think the proof of this allegation was entirely

sufficient so far as concerns the questions of cars on Jennings' part and the negligence of the appellant, to justify a recovery without any proof that he was received as a passenger. It is elementary that, in this class of cases, the proof of one charge of negligence is sufficient to justify a recovery, so far as negligence is concerned, without proving other charges of negligence made by the declaration. If Jennings was received as a passenger, appellant's duty to him was that of the highest care, but if he was not, it still owed him the duty of exercising ordinary care, at least, to avoid injuring him.

On behalf of appellant it is also claimed that there was error in permitting evidence as to the use made, prior to the accident, of the planking between the north and south bound tracks, in alighting from and taking suburban trains at the Seventy-sixth street station, and also as to the extent of such use. No authority is cited in support of the contention, and we think what has already been said shows that this evidence was entirely proper and admissible.

The learned trial judge refused thirteen instructions asked for appellant and modified two others, each of which rulings is claimed to have been erroneous. Five of these instructions, numbered one to five inclusive, are based upon the theory that it was necessary for appellee to prove, before there could be a recovery, that Jennings had been received as a passenger by appellant. What has been said sufficiently disposes of the claim that it was error to refuse these instructions.

Two others of these instructions, number six and seven, are based upon the theory that it was the duty of Jennings to have looked in each direction for the approach of trains and in substance tell the jury that there could be no recovery unless he did so look. What has been said we think disposes of this contention, and shows that it was not error for the court to refuse the instructions.

The ninth refused instruction is in substance covered by the tenth. Instruction No. 11½ refused, is in our opinion properly refused, because it singles out and calls to the

jury a particular part of the evidence. We think the twelfth and thirteenth refused instructions were properly refused, the twelfth, because there was evidence that the north-bound train had stopped at the station for the purpose of receiving and discharging passengers, and that it was a violation of appellant's rule for the south-bound train to pass it under such circumstances. The thirteenth instruction ignores the rule of the company, and was therefore properly refused. The fourteenth instruction was properly refused, because, among other things, it tells the jury there was no proof as to whether or not the bell on the engine of the south-bound train or the tower bell was ringing as the south-bound train approached the crossing. The first of appellee's witnesses testified that "aside from the shrill whistling that occurred before the accident I didn't hear, notice or remember anything else." From this evidence we think the jury were justified in finding that neither of these bells was rung. The fifteenth instruction was properly refused, because it is argumentative, and besides it, in substance, tells the jury that certain facts constitute negligence. I. C. R. R. Co. v. Griffin, 184 Ill. 10.

Instructions numbered ten and one-half and eleven were properly modified. Instruction ten and one-half, as asked, had the same defect as to Jennings' duty to look up and down the tracks as instructions six and seven, refused. As modified this objection was cured. The eleventh instruction was as favorable to appellant as amended as it was entitled to have it. We see no objection to the instruction given as it was modified. Being of opinion that the jury was sufficiently instructed as to the issues involved, and that there is no error in the record, the judgment is affirmed.

Mr. Justice Adams: I concur, except in the holding that the evidence shows that Jennings was received as a passenger.