STEPEHN F. RACZELOWSKI *vs.* N. Y., N. H. & H. R. R. Co.

JULY 1, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Carriers. Personal Injuries. Negligence.*

About 7:40 P. M., on August 16th, as plaintiff approached a railroad station the train which he intended to take was at the station, headed west and on the farther of two parallel tracks. The gates were down, with lanterns attached. There was a fence between the tracks painted a dark color. This had been erected about a month. There were electric lights about 96 feet from the end of the fence, and also lights from the porch of the station on one side of the tracks and from the porch of a baggage room on the other side. Prior to building the fence it was customary under an operating rule of the carrier for a northbound train to wait if there was a southbound train at the station, but after the installation of the fence trains passed in the station. Plaintiff had not been at the station for about three months. Plaintiff claimed that when he stepped from the street he saw a train approaching, but slowing down and after walking a few feet he looked again and saw the train still coming, but slowing down. He was then about 15 or 20 feet from the

track.   He then passed over the platform and into the track at a rapid pace and was within arm's lenth of the fence when he heard the whistle, saw the train very near, turned back and was struck.   Plaintiff claimed that he had no notice of the fence and the change in boarding a train from the station side only and that in crossing the first track he relied upon the former rule.

*Held,* that plaintiff was guilty of contributory negligence as a matter of law; that upon the above facts it appeared the fence was not the proximate cause of the accident, and in view of plaintiff's reckless conduct it was immaterial that defendant had changed without notice to him the rule regarding the passing of trains.

*(2)   Negligence.   Direction of Verdict.*

Where the negligence of a plaintiff is clear on undisputed facts, amounting to a lack of ordinary prudence, there is nothing to go to the jury and a verdict should be directed.

JOHNSON, C. J., and SWEETLAND, J., dissenting.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant and sustained.

PARKHURST, J.   This is an action of trespass on the case for negligence brought to recover compensation for personal injuries alleged to have been received on August 16th, 1912. The declaration is in two counts, and alleges that at about 7:40 in the evening of that day the plaintiff proceeded northerly on Broad Street, in the City of Pawtucket, crossed the platform of the railroad, which is to the south of the tracks; that he then attempted to take a train for Providence when he was prevented by a fence, which was between the two tracks.   Before he could escape, he was struck by a locomotive which was being operated in an easterly direction, whereby he was so severely injured that amputation of the right leg was made necessary.   Damages are laid in the sum of $50,000.

More specifically, the first count sets out that the defendant company had formerly had a rule in force which provided that no train should be operated through said station and past another train standing in said station for the reception and delivery of passengers; that the plaintiff had knowledge of this rule and relied upon it; that notwithstanding said rule a train was sent through the station upon

the eastbound track while a train was discharging passengers and taking on passengers upon the westbound track.

The second count alleges that the defendant had constructed a fence between the eastbound and westbound tracks; that no knowledge or notice of the erection and maintenance of this fence had been given the plaintiff; and that at the time of the alleged injury the fence could not be seen because of insufficient light at the station, the result of all of which was injury to the plaintiff as set out in the first count.

To the declaration the defendant filed a plea of general issue. The case was tried before a justice of the Superior Court and a jury between October 26th and November 4th, 1914, and resulted in a verdict for the plaintiff for $10,500. At the conclusion of the testimony the defendant moved that the jury be directed to return a verdict for the defendant, which motion was denied and exception taken thereto. This exception to the refusal of the trial court to direct a verdict and other exceptions taken during the trial of said case were embodied in a bill of exceptions, which was duly prosecuted, and is now before this court. No motion for a new trial was made.

As appears from the testimony taken at the trial, the plaintiff and a friend named Pietz had been in Newport for the day. They returned to Pawtucket by steamer, and after landing at the dock a little later than seven o'clock they went to a lunch room, where they had sandwiches and coffee, after which they proceeded in a northerly direction up Broad Street. The testimony of the plaintiff is that as they neared the station they began to hurry, and Pietz went in advance of Raczelowski. They crossed the platform which runs east and west and to the south of the tracks, between the lunch-cart, so called, and the gateman's shanty. After Pietz left the plaintiff he did not see him again until after the accident. The intention of both was to take the 7:40 P. M. train for Providence. As they came up Broad Street this train was at the station, headed west and on the

farther of the two tracks from them as they approached.
Broad Street crosses the railroad at grade, and the crossing
was protected by gates on each side.   Pietz knew nothing
about the position of these gates, and the plaintiff says that
he didn't pay attention to the gates as he was in a hurry to
get the train.   It is nowhere denied that they were down,
and there was ample testimony that they were down with
lanterns attached.   There were many people on the platform.
The station building containing the ticket office was shown to
be on the northerly side of the tracks, while there was upon
the southerly side of the tracks a baggage room with porch
in front.   At the extreme west end of the building commonly
termed the baggage room was an express office, on the
front of which was a door and a few feet to the east a window.

Broad Street crossing, so called, was covered with planking
and running from the easterly end of this planking, easterly
for a distance of 500 feet was an iron fence.   This was 4 feet
7 ⅞ inches in height above the top of the rail, and was
between the two tracks.   This fence was constructed of iron
wire, about one-half inch in diameter, and was painted a
dark color.   This fence was begun between the 20th and 25th
of June, 1912, and completed July 11th or 12th.   The spaces
between posts were eight feet in length.

Dexter Street crossing was shown to be to the west of
Broad Street and 467 feet from it.

On the westerly side of Broad Street, there were two
electric lights near the crossing.   On the south the pole was
96 feet from the end of the fence.   Both lights were attached
to yard arms, which projected into the street, and both
were a high type of light.   There were electric lights sus-
pended from the porch of the station proper, and also from
the porch in front of the baggage room.   In front of the bag-
gage room these lights were 26 feet apart.   From the nearest
baggage room light to the westerly end of the fence was a
distance of 50 feet, while from the third post to the first
baggage room light was 29 feet.   The station lights were
all 25 watt Tungsten lamps, and, according to witness,
Frank W. Dunne, "the last thing out in lighting."

It appeared that prior to the building of the fence it was customary under an operating rule of the defendant company for a northbound train to wait to the west of Broad Street crossing if there was a southbound train discharging or taking on passengers at the station. It also appeared that after the installation of the inter-track fence trains passed each other in the station, the rule being then abrogated.

The plaintiff, according to his own testimony, had not been in Pawtucket since Decoration Day of the same year. Pietz admits that as he reached the platform he was walking pretty fast; that he did not see the train which was approaching on the northbound track, and that when he was near to the Providence train he saw the fence. Raczelowski, on the other hand, when he stepped from the street to the curbstone, looked toward Dexter Street and saw a train coming, but slowing down as he said. He walked a few feet, and when just past the shanty looked again and saw the train 100 feet the other side of Broad Street crossing, still coming, but slowing down. Without looking again at the approaching train he then passed over the platform and into the track, and was within arm's length of the fence when he heard the whistle of the locomotive, turned and saw it very near him, turned back across the track, and was struck by the right-hand side of the engine of the Shore Line train and severely injured.

The plaintiff claims that no notice was given him of the installation of an inter-track fence and of the consequent change of boarding a southbound train from the station side only; that in crossing the first track he relied upon the rule formerly in force, which required that trains should not pass each other in a station; and that he had no notice of a change of rule in this particular.

The defendant contends that it was unnecessary and impracticable to give notice of such a change in stational structure and facilities more than is given by the structures themselves; that a former rule requiring one train to wait before passing through a station until another had left it was

an operating rule only and one on which the public could not rely, and that because of that fact, no notice to the public was necessary when the rule was changed. Further, that the accident was due to the gross carelessness of the plaintiff, who stepped in front of a train which, when last seen, was steadily coming toward him.

Various exceptions were taken by the defendant during the trial of the case, but in the view which this court takes of the evidence it will be necessary to notice only the 47th exception which was taken to the refusal of the justice who tried the case to direct a verdict for the defendant, at the close of all the evidence.

(1)    We think the plaintiff, upon all of the evidence, and particularly upon his own evidence was clearly guilty of contributory negligence as a matter of law, and that the motion for direction of a verdict for the defendant should have been granted. It clearly appears from the plaintiff's own testimony that before he entered the station platform and while he was still on the street he looked westerly and saw the train (which afterward struck him) approaching, but he thought it was slowing down; that as soon as he entered upon the station platform he looked again toward the moving train and saw it still approaching; he was then about 15 or 20 feet from the track upon which the approaching train was running and could easily have observed the train to see whether it came to a stop; but without further observation, hurrying to catch his train on the further side of the station and intent only thereon, at a rapid pace which he says was neither walking nor running, following Pietz, he entered upon the track in front of the moving train in such close proximity to the front of the locomotive that when he had gone about the width of the track (or less than five feet) so that he was within arm's length of the fence, he heard the whistle of the engine, looked up and saw the engine "almost on top" of him, turned back and attempted to get back to the platform and was immediately struck, knocked down, dragged and severely injured. That the gate across the

Broad Street entrance to the crossing was down at the time of the accident with lanterns lighted and hanging from the bars is undisputed; plaintiff had no difficulty in seeing where he was walking and saw the rails; it is quite evident that he was in a great hurry, intent only on getting his train, that he did not reach the fence, and that the fence was in no sense the proximate cause of his accident.

It is noteworthy that this same crossing was the scene of an accident somewhat similar to that in the case at bar, where the same rule as to stopping a train outside the station when another train was standing in the station to receive or discharge passengers was invoked in favor of the plaintiff's deceased husband.    In the case of *Chaffee* v. *Old Colony R. R. Co.*, 17 R. I. 658 (decided in 1892), the essential facts were somewhat similar.    On September 6, 1890, William T. Chaffee, who was a passenger on a train going to Providence, which train stopped at Pawtucket and was standing on the southbound track, left his train and went to the baggage room across the northbound track; he there delayed until just as his train was about to leave for Providence, and then in a great hurry, without looking to see whether a train was coming, crossed the northbound track in the attempt to board his train on the southbound track, and in some way not quite clearly established he was killed by a train which was coming on the northbound track.    It appeared that the approaching train could have been seen by the deceased for several hundred feet before it reached the station.    At p. 660, the court says:    "If it be conceded for the purpose of the present inquiry that the defendant was guilty of negligence in running its northbound train into the station before the southbound train had entirely cleared it, we nevertheless do not think the verdict can be sustained.

"If the deceased, in his attempt to board the southbound train when it was in motion, lost his footing, and, falling to the ground, received his injury in consequence of being struck by the steps or wheel of a car upon the train he was endeavoring to board, the plaintiff cannot recover, for the

testimony shows no negligence on the part of the defendant's servants in the starting or management of that train.

"Nor do we think the plaintiff is entitled to recover if the deceased was struck by the engine of the incoming train, and received the injury which caused his death by being thrown by that engine against a car of the outgoing train. Ordinary prudence requires one who is about to cross a railroad track to use his senses, to look, to listen, for the purpose of ascertaining whether he can cross in safety. This, as was said in *Ormsbee* v. *Boston & Providence R. R. Corp.*, 14 R. I. 102, is an established rule, both of law and experience."

. . .

"A rule prescribed by the New York, Providence & Boston R. R. Co. and the defendant for the government of their employees, with reference to the station at Pawtucket, is to the effect that if a train on the southbound track is standing at, or has not entirely passed, the station, a northbound train shall stop south of Broad Street, and allow the other train to clear the station before proceeding.

"The plaintiff suggests that it is fair to presume that the deceased knew of this rule, and relied upon the supposition that it would not be violated. The rule was made for the government of the employees of the railroad companies in the management of trains, not for the guidance of the public. The testimony does not show that it was generally known to the public or to the deceased. But even if it could be shown that he did know of it, and relied upon its observance by the defendant's employees, we do not think such knowledge and reliance would absolve him from the duty of exercising ordinary care for his own protection; and the southbound train being in motion, and the implied assurance of the defendant that he might safely be upon the track being withdrawn, ordinary care required him to look to see that no train was approaching which would endanger his safety.

"Inasmuch, therefore, as the deceased, by reason of his entire absorption in his purpose and attempt to get on the moving train, failed to look to see whether a train was

approaching before crossing the northbound track, or before stepping back toward it or on it, while waiting for the end of the car which he was intending to board to come along, and paid no attention to the warning shouts of others who saw his danger as he himself might have seen had he looked, we think he was guilty of contributory negligence, and that the plaintiff is not entitled to recover."

We think the principles of law set forth in the above case are fully applicable to the case at bar.    In view of the plaintiff's reckless conduct in entering upon the track so near the approaching train, it was quite immaterial that the defendant had changed, without notice to him its rule regarding the passing of trains in the Pawtucket station after building the intertrack fence.

In *Wheelwright* v. *Bos. & A. R. Co.*, 135 Mass. 225, the plaintiff in order to take an approaching train crossed a track relying upon the custom of two trains not passing in the station.    She was struck and injured.    The court held that the rule of the company did not excuse her from taking precautions for her own safety; at p. 230, the court said: "In the case at bar, the accident happened in broad daylight, between ten and eleven o'clock in the forenoon; the track was straight for a quarter of a mile easterly from the place where the plaintiff stepped upon it; and there was nothing to obstruct her view of the track for that distance, from any point on the platform within five feet of its southern edge. The conclusion is irresistible, that the plaintiff's attention was so far occupied, by the approach of the train she was to take, that she omitted to look along the track she was to cross, and stepped directly in front of the train which struck her.    Her knowledge of the rules of the defendant, that trains should not pass each other at stations, or follow each other within five minutes, did not, under the facts in this case, excuse her from taking the simple and obvious precaution of looking to see what might be coming on the track she was stepping upon."

In *Connolly* v. *N. Y., N. H. & H. R. R. Co.*, 158 Mass. 8, it appears that plaintiff after leaving one train at Readville station was crossing a track and was struck by another train. This passing of trains in a station was contrary to defendant's rule, but the court held that "It was not passed for the purpose of conveying any assurance to him and did not purport to convey any." And after fully discussing the facts of the case and the conduct of the plaintiff, the court says, p. 10: "So the question comes down to this,—whether a person is warranted in assuming that trains will not cross each other at a station, and in shutting his eyes and walking ahead on that assumption. That question was answered in *Debbins* v. *Old Colony R. R.*, 154 Mass. 402.

In *Debbins* v. *Old Colony Railroad Company, supra,* the facts were much like those in the present case. Plaintiff came to the station and saw his train on the farther track. The street crossing gate was closed. Across the tracks and to his right was the station proper. On plaintiff's side was a waiting shed. Between the station and the shed was planking. The train extended across the planking and the train gates on plaintiff's side were closed. Plaintiff passed gate on the sidewalk, which was not obstructed by it, and began to cross the nearer track diagonally to go around the rear of the train. He glanced up the track, but because of steam and smoke, failed to see an oncoming train which struck him. There was no headlight and there was evidence that train was not ringing its bell or sounding its whistle. Gateman was standing in middle of highway with his back to plaintiff. It was held that plaintiff was guilty of willful negligence. "He elected to go forward on the strength of a glance when the train was so close upon him as to run him down before he could cross the track." . . . "But here the defendant hardly can be said to have invited the plaintiff to cross the track, seeing that its only act was to shut the gate in his face."

In *Rich* v. *Evansville & Terre Haute R. R. Co.*, 31 Ind. App. 10, the court held in affirming judgment for defendant

upon demurrer to complaint, in which it appeared that plaintiff's deceased drove a team upon a track relying upon a custom of having this train take a siding, and was killed, that the omission of the appellant to sidetrack the train in question was not negligence.

In *Cleary* v. *Phil., etc., R. Co.*, 140 Pa. St. 19, the court held that there was no error in nonsuiting plaintiff when it appeared that plaintiff's husband started to cross a road when the gates were down and struck by one train while his attention was upon another. The court says, p. 21: "With the safety gates down, he started to cross the road at a point where there are four tracks. While he was looking at one train he was struck by another. He knew that the lowering of the gates was a danger signal; that it signified the occupation of the tracks by passing trains. We cannot assent to the proposition that the gates were intended merely to warn vehicles; on the contrary they are equally a warning to foot passengers; the principal difference being that when down a vehicle cannot pass, while a foot passenger, if sufficiently foolhardy, may do so. It was also a mistake to suppose the gates were down on account of a particular train. They were down for all trains, moving or passing at the time. The deceased thought there was but one train. In this he was unfortunately mistaken; there were two trains, and the mistake cost him his life. He stepped in front of a moving train in broad daylight. Much as the accident is to be regretted, we cannot hold the company responsible. It was guilty of no negligence."

In *Granger, Adm'r,* v. *Boston & Albany R. R. Co.*, and *Chipman, Adm'r,* v. *Boston & Albany R. R. Co.*, 146 Mass. 276, the court found plaintiffs' intestates were guilty of negligence in attempting to pass over a crossing when the gates were down. In these cases and in the case at bar there was a total lack of invitation on the part of the defendants, and utter recklessness on the part of the plaintiffs.

(2)     In the case at bar the negligence of the plaintiff is clear, upon undisputed facts. The action of the plaintiff in

running upon the track was not the act of a person of ordinary prudence. When the negligence of the plaintiff is of that character, as well as in the case where no negligence on the part of the defendant has been shown, the Rhode Island courts through a long series of opinions have said that there was nothing to go to the jury.  *Clarke* v. *R. I. Electric Lighting Co.*, 16 R. I. 463; *Chaffee* v. *Old Colony R. R. Co.*, 17 R. I. 658; *Gaffney* v. *The J. O. Inman Mfg. Co.*, 18 R. I. 781; *Nicholas* v. *George H. Peck, T. Tr.*, 20 R. I. 533; *Nicholas* v. *George H. Peck, T. Tr.*, 21 R. I. 404; *Judge, Adm'x,* v. *Narragansett Electric Lighting Company,* 23 R. I. 208; *Galloshaw* v. *The Lonsdale Co.*, 25 R. I. 383; *McGoran, Ex'x,* v. *N. Y., N. H. & H. R. R. Co.*, 25 R. I. 387; *Cottrell, Ad'm,* v. *Pawtucket St. Ry. Co.*, 27 R. I. 565; *Armington, Adm'x,* v. *Providence Ice Company,* 33 R. I. 484.

The defendant's motion for the direction of a verdict in its favor should have been granted, the refusal thereof was error, and the defendant's exception 47 is sustained. The other exceptions therefore need not be discussed.

The court is of the opinion that the case should be remitted to the Superior Court with direction to enter its judgment for defendant. The plaintiff will have an opportunity to show cause why this order should not be made on Tuesday, July 6th, 1915, at 10 o'clock in the forenoon.

SWEETLAND, J., (dissenting). I am forced to dissent from the opinion of the majority that an order should be entered directing a judgment for the defendant. To justify such an order, it must clearly appear that there is no legal evidence in the case tending to show that the defendant was guilty of negligence and that the plaintiff was in the exercise of due care. The majority appears to base its decision principally upon what it finds to be the negligence of the plaintiff. It does not expressly declare that the defendant should be found free from negligence as a matter of law, but in the discussion of that question the opinion appears so to hold in the finding that the rule in question was merely

an operating rule which the defendant might abrogate at pleasure without notice to the public; and that the existence of the fence in question between the tracks was sufficiently brought to the attention of the public and of this plaintiff by its presence there.

I am of the opinion that there was evidence in the case which should have been submitted to the jury upon the question of the defendant's negligence. The plaintiff had come upon the station premises provided with a ticket to be used upon the train standing in the station. In legal effect he had thus been accepted by the defendant as a passenger and was entitled to receive from the defendant the highest degree of care for his safety. This court, in *Boss* v. *Providence and Worcester R. R. Co.*, 15 R. I. 149, said: "In regard to the degree of care which the law imposes upon common carriers of passengers, it is settled, by a long and uninterrupted line of adjudications, that they are bound to exercise the utmost care and skill which prudent men would use under similar circumstances; and that they are liable for injuries resulting from even the slightest negligence on the part of themselves or their servants."

The circumstance that a railroad company permits one of its trains to pass through a station while another train is standing upon an adjoining track in the station for the purpose of permitting passengers to enter and leave the latter train always presents the question whether the company has used care commensurate with its duty in guarding its patrons and in warning them of possible danger; and if there is any legal evidence upon which a reasonable mind could find that the railroad company had neglected said duty of guarding and warning its passengers the question of the defendant's negligence should be submitted to the jury. The defendant claims that it had taken proper means to warn the public and the plaintiff by placing a fence between the two tracks. To this claim the plaintiff replies that whatever else may be said of said fence, as not constituting sufficient notice to the plaintiff, it was entirely ineffective

for that purpose in the evening when this accident occurred. The act of a railroad company in sending a train through a station while a passenger train is receiving and discharging passengers thereat has been frequently considered by courts and invariably held to be evidence of negligence. In *C. & A. R. R. Co.* v. *Kelly*, 182 Ill. 267, the court held such act to be so plainly negligent as not to require comment.

In the case at bar it appeared that for at least thirty years previous to about a month before this accident, there had been a rule of the defendant and its predecessors in the use of the Pawtucket station, made for the direction of their employees, that when a train was standing at said station receiving or discharging passengers, a train approaching the station on the other track should come to a full stop and remain standing until the first train had drawn out of the station; and further, that said defendant and its predecessors had during all that time permitted passengers to leave and enter trains at the station to and from the platforms on either side of its tracks and to freely cross its tracks for that purpose. This rule and this method of conducting its business was well known to persons using said station as passengers of the defendant and was well known to the plaintiff. The majority opinion appears to adopt the defendant's contention that this rule and practice was an operating rule only and one on which the public could not rely, and because of that fact no notice to the public was necessary when the rule was changed. It may be termed an operating rule, but it was one made not for the convenience of the defendant, but for the safety of its passengers. It had been in operation for many years to the knowledge of the public of Pawtucket, and about it had grown up a custom on the part of said public which was well known to the defendant. Any change in said operating rule without proper notice to passengers using its station would be likely to result in injury to some one. It cannot be said as a matter of law that the defendant could without negligence on its part abrogate said rule so necessary to the safety of the public without

ample notice to those to whom it owed the highest degree of care.  The only notice which the defendant had given was the erection of the fence between the tracks; from the presence of this fence it claims that the public might infer that thereafter it would change its former rule.  It was clearly a question of fact to be submitted to the jury whether the fence constituted sufficient notice of the change of rule.  It would not amount to notice if it was not plainly to be seen by a person about to cross the tracks.  In regard to whether said fence was sufficiently prominent at night to amount to a warning I think the majority opinion has overlooked an important rule.  In considering whether it will order the entry of judgment contrary to a verdict the court should not pass on the preponderance of the evidence but on all points the evidence should be viewed in its aspect most favorable to the party having the verdict.

There was testimony from which the jury might find that this fence was about four feet and eight inches high; that it was made of iron wire about one half inch in diameter; that it was painted a dark color similar to the color of the coaches of the defendant's passenger trains; that when a train was standing on the north track at the station said fence was very near to it; that in the evening said fence had no lights upon it; that as a train stood upon the north track near it, a person crossing the south track towards it could not easily distinguish it as an object distinct from the train, in the shadow of which it stood; that when it was shaded from the lights of the station by a train on the north track insufficient light was thrown upon it from the lights under the hood of the south platform or from any other source to make it plainly describable.  We gather from the opinion, that notwithstanding the above testimony the majority find that there was ample illumination of the fence at night to have it serve as a notice and a warning to this plaintiff before he left the south platform that the defendant had changed the method of conducting its business at the Pawtucket station.

The majority opinion lays the greater stress upon its conclusion that the evidence shows the plaintiff to be guilty of contributory negligence as a matter of law, in stepping from the south platform and crossing the south track, when he had observed a train upon that track west of the station. It dismisses as untenable the plaintiff's claim that the question should have been submitted to the jury as to whether the plaintiff was entitled to rely upon the rule above referred to and upon the duty of the defendant to use a high degree of care for his safety. The majority makes much of the circumstance that the gates at the Broad Street crossing were down, holding that this fact indicated that the defendant was about to send the train, which struck the plaintiff, through the station, although the Providence bound train was standing there; and that the condition of the gates was notice to the plaintiff of that fact. There was ample evidence warranting the jury in finding otherwise. The Pawtucket station abuts on Broad Street and the crossing gates on the street are operated with reference to trains approaching the station, and also with reference to trains standing in the station. The gates would be down if the Providence train was standing in the station and no other train was near, or if the other train stopped and was held west of the station. The fact that the gates at Broad Street were down gave absolutely no information as to whether the approaching train was to stop west of Broad Street or was to pass through the station.

The jury might find in the conditions existing on the evening in question that the defendant had failed to bring to the knowledge of the plaintiff when he started to cross the track that the fence existed; and that by reason of the defendant's negligence in failing thus to warn the plaintiff, the situation as far as he was concerned at that time was that of a train standing at the station and taking on passengers, with the implied invitation from the defendant to the plaintiff to cross the south track and board it. It is true that the plaintiff had observed the other train west of Broad

14

Street approaching, but slowing down and the jury might find from some of the evidence that it came to a full stop. The jury might also find that the plaintiff, relying on the implied invitation of the defendant to cross the track to his train, believed, and was justified in believing, that the other train would remain west of Broad Street in accordance with the rule of the company, which he knew to have been long in force.  It was a question for the jury whether in all the circumstances the plaintiff was justified in relying upon the assumption that the defendant would observe its duty to use a high degree of care towards him and would not disregard its long continued practice.

In *Terry* v. *Jewett*, 78 N. Y. 338, the court said: "The charge that the deceased had a right to assume that the defendant would run its train in a lawful manner, and to act accordingly, was also correct.  She had no ground for supposing otherwise than that due care and caution would be observed in caring for the passengers on the road, while passing from the depot to the cars; and such a conclusion was fully warranted."

The majority opinion quotes at considerable length from the case of *Chaffee* v. *Old Colony R. R. Co.*, 17 R. I. 658, as an authority in support of its position.  That case if carefully considered is clearly an authority against it.  The *Chaffee* case was decided in 1892, and it appears that at that time the same rule was in force at the Pawtucket station that was in force just before the building of said fence.  In that case it appeared that the plaintiff's husband was killed at the Pawtucket station by an incoming train while he was attempting to board a train which had been standing at said station, but was then moving out of it.  The point under discussion and decided in that case was that boarding or attempting to board a moving railroad train is an improper and dangerous act and that the plaintiff's husband in attempting to do so was guilty of contributory negligence.  No such circumstance is involved in the case at bar.  The plaintiff here was moving across the track to board a train which was

standing still.   But the opinion in the *Chaffee* case does
enunciate one principle of law, overlooked by the majority,
which has a vital bearing on the case before us.   In speaking
of the duty generally imposed upon a person about to cross
a railroad track to look both ways before doing so the court
says:   "It is true the rule is subject to exceptions, and one of
these is when it is necessary for a passenger going to or
alighting from a train to cross a track to reach the train or
station.   This exception rests upon the implied invitation
of the company to cross its track, and its implied assurance
that the passenger may safely do so.   But such implied
invitation and assurance continue only so long as the train is
stopped at the station for the purpose of receiving passengers
and allowing them to alight.   When a reasonable time for
this purpose has been given, and the train has started on
its way, such implied invitation and assurance are at an end,
and the obligation to look both ways before crossing the
track revives."   That is undoubtedly a correct statement
of the law, as it exists in this State and in most other  states,
and should be thus applied to the circumstances of this
case.   The train which the plaintiff desired to board as a
passenger was standing at the station, he was approaching
it from the place whence for over thirty years a great part
of the passengers from Pawtucket to Providence had
proceeded to board their trains, viz.: across the other track.
He had, in the language of the *Chaffee* case, "the implied
invitation of the company to cross its tracks and its implied
assurance that the passenger may safely do so," unless
the defendant had by some sufficient notice brought it to the
plaintiff's knowledge that said implied invitation had been
withdrawn and he could no longer rely upon the implied
assurance of safety.   The opinion also cites three Massa-
chusetts cases where an entirely different doctrine as to
implied invitation and assurance of safety is announced
from the one adopted by this court and the courts of most
other jurisdictions.   The majority opinion also cites three
other cases which deal, not with circumstances of passengers

at stations passing over tracks to and from their trains, but of others not passengers who either on foot or in wagons have gone onto railroad tracks at highway crossings. This court in *Boss* v. *Providence and Worcester R. R. Co.*, 15 R. I. 149, in speaking of the cases of persons injured who were not passengers, but simply travelers in the act of crossing or walking upon the railroad track, said: "But, as a very different rule of responsibility obtains where an accident occurs during the existence of the relation of passengers and common carriers from that which obtains under the former circumstances, we do not think that these cases have much bearing upon the one under consideration."

In *Terry* v. *Jewett*, 78 N. Y. 338, the court said: "The rule is well settled that a traveler crossing a railroad track on a public highway is bound to use his eyes and ears to ascertain whether a train is approaching; but this rule has not been held in this State to apply to passengers who are crossing a track at a station to get on a train. There is a difference between the care and caution demanded in crossing a railroad track on a highway and in crossing while at a depot of a railroad company to reach the cars."

In *Beecher* v. *Long Island R. R. Co.*, 161 N. Y. 225, the court, speaking through Parker, C. J., said: "The jury were at liberty to find from the evidence before it that the defendant had started the train on the south track substantially every morning for many years, and that during all that period of time, upon the announcement by the doorman of 'the rapid transit for Brooklyn,' the people were accustomed to rush out of the station, over the station platform to the north tracks, then across them to and upon the platform, in readiness to board the train as soon as it came to a stop; and that this custom had been so long continued that such an announcement by the doorman on the morning in question, constituted an invitation to every passenger there, including the plaintiff's testator, to pass out of the station, across the station platform, then over the north tracks and to the platform of the south track, with

the assurance that the way was not only free from obstructions, but would remain so for such a reasonable time as would enable them to pass to the train in safety, and, therefore, it was for the jury to say whether in accepting that invitation and proceeding as plaintiff's testator did, without looking and listening, and in the manner described by the witnesses, he was nevertheless exercising that reasonable care and caution which the situation demanded."

In *Grand Rapids, &c. Co.* v. *Cox*, 8 Ind. App. 29, the court said: "From these authorities it is plain that our court has repeatedly recognized the existence of the exception to the general rule, and that where the traveler is deceived and thrown off his guard by the conduct and fault of the company, he may be deemed to have been in the exercise of proper care without taking all the precautions which would otherwise be required."

As the jury were at liberty to find that the defendant, on the night in question, had given no adequate notice of a change of conditions the question of the plaintiff's negligence in crossing the track without again looking down the track is not one of law, but of fact for the jury.   In *Chicago, &c. R. R. Co.* v. *Jennings*, 89 Ill. App. 335, the court said: "It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under the circumstances must be left to the jury as one of fact."

In *Redhing* v. *Central R. Co.*, 68 N. J. L. 641, the court held: "It is a settled rule in this State that when the position of the station and tracks of a railroad company is such that passengers about to take or leave a train standing at the station must cross intervening tracks, it is negligence in the company to run cars over these tracks, and that it is a question for the jury whether a passenger, who attempts to cross those tracks without looking for approaching cars, is guilty of negligence."

The court said in *North Chicago, &c. Co.* v. *Irwin*, 202 Ill. 345: "But whether he (plaintiff) had the right to rely solely upon his knowledge of the custom and to omit other precautions, and yet be deemed in the exercise of ordinary care, was a question of fact, to be determined by the jury upon consideration of all the testimony bearing upon the point."

In *Sorenson* v.*Ill. Central*, 155 Ill. App. 606, the court held: "What is due care depends upon environing conditions and sometimes involves custom and knowledge actual or attributable to one or the other of the parties. Therefore in the instant case it was for the jury, in determining the question of due care on the part of the plaintiff, to take into consideration his knowledge of defendant's custom in operating its trains upon certain tracks, and whether in relying thereon he was injured, or that in failing to take other precautions for his safety negligence was imputable to him."

It is a question for the jury in this case whether the act of the plaintiff in crossing the track was the proximate cause of the accident. He had safely crossed the track and was within arm's length of the fence when he first saw it, although he had been looking directly at it. After that he had time to turn and recross the track before he was struck by the engine on the other side of the track. But for the presence of the fence which the jury might find was being negligently maintained by the defendant he would have passed in safety.

In the recent case of *Canham* v. *Rhode Island Company*, 35 R. I. 177, the plaintiff's intestate with two companions was standing on the platform of the defendant's station at Silver Hook, situated on its private right of way, when the car that the deceased desired to take appeared around a curve about 200 yards north of the station proceeding at a high rate of speed. While his companions signalled for the car to stop the deceased stepped from the platform on which he was standing and proceeded to cross the intervening tracks towards the platform on the other side of the track, from which platform he must board said car. While crossing

the track on which the car was approaching the intestate
was struck and killed by said car which did not stop at the
station.    Although the court did not announce that as the
reason of its decision, it applied a rule more liberal to the
plaintiff than that laid down in the *Chaffee* case, *supra*.    For
the court must have held it to be a question for the jury
whether there was an implied invitation of the defendant for
said intestate to cross the track at the station and an implied
assurance of safety from the car which was approaching and
which should have stopped upon the signal of the intestate
and his companions.    The court said:  "It is sufficient
to say that, in our opinion, the record as it stands does not
conclusively show, as a matter of law, that the deceased was
guilty of contributory negligence which was the proximate
cause of his death."    The leading case in this State of *Boss*
v. *Providence and Worcester R. R. Co.*, 15 R. I. 149, also
involved an accident near the Pawtucket station.    The
train on which the plaintiff was riding approached the station
from the west and stopped west of the Broad Street crossing,
because there was a train then passing through the station.
Said plaintiff, thinking that the train had reached the station,
alighted from his car and was crossing the other track,
apparently without looking both ways, when he was struck
by the train that had been coming through station.    The
court said:   "And the same is true with regard to contribu-
tory negligence on the part of the plaintiff.    And although
there are cases in which, the facts being undisputed, and
being decisive of the case, it becomes the duty of the court to
decide as matter of law upon the question of negligence, yet
it is only in those cases where the question of fact is entirely
free from doubt, and where only one conclusion can be fairly
arrived at therefrom, that the court has the right to thus apply
the law without the action of the jury."    The court quoted
with approval the following:  "When, from the circumstances
shown, inferences are to be drawn which are not certain and
incontrovertible, and may be differently made by different
minds, it is for the jury to make them; that is to say, when

the process is to be had at a trial of ascertaining whether one fact had being from the existence of another fact, it is for the jury to go through with that process." The court finally said: "As to the claim made by the defendant that the accident resulted from the plaintiff's carelessness, it seems to us that the only reply which the court need make is, that while unquestionably there was evidence tending to prove this, yet it was for the jury to say whether it was proved as matter of fact under the law as given by the court; in other words, that the evidence of carelessness on his part is not so conclusive and free from doubt as to warrant the court in deciding as a matter of law that he was guilty of contributory negligence."

From a careful consideration of all the testimony in the light of the great weight of authority, I am of the opinion that the court cannot say, in the case at bar, as a matter of law, either that the defendant was free from negligence or that the plaintiff was guilty of contributory negligence.